[No. H017510. Sixth Dist. Dec. 7, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
ALLEN DOUGLAS BUTLER, Defendant and Appellant.

## COUNSEL

James R. Stupar, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Joan Killeen and Moona Nandi, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BAMATTRE-MANOUKIAN, Acting P. J.**—Defendant Allen Douglas Butler appeals from the trial court's order committing him to the Department of Mental Health pursuant to its finding that he is a "sexually violent predator" under the Sexually Violent Predators Act (Welf. & Inst. Code, § 6600 et seq.).[1]

In this appeal, defendant contends: (1) the trial court erred by denying defendant's motion to confront and cross-examine witnesses at the probable cause hearing (§ 6200); (2) there was insufficient evidence to sustain the trial court's finding that defendant is a sexually violent predator; and (3) the Sexually Violent Predators Act is unconstitutional in that it violates the constitutional prohibition against ex post facto laws and the constitutional guarantees of equal protection and due process. We will affirm the judgment.

## I. SUMMARY OF THE SEXUALLY VIOLENT PREDATORS ACT

The Sexually Violent Predators (SVP) Act, adding sections 6600 through 6608 to the Welfare and Institutions Code, was enacted October 11, 1995, effective January 1, 1996. (Stats. 1995, chs. 762 & 763.) In section 1, the Legislature set forth its findings and summarized the purpose of the new law, as follows:

"The Legislature finds and declares that a small but extremely dangerous group of sexually violent predators that have diagnosable mental disorders

---

[1]All further unspecified section references are to the Welfare and Institutions Code.

can be identified while they are incarcerated. These persons are not safe to be at large and if released represent a danger to the health and safety of others in that they are likely to engage in acts of sexual violence. The Legislature further finds and declares that it is in the interest of society to identify these individuals prior to the expiration of their terms of imprisonment. It is the intent of the Legislature that once identified, these individuals, if found to be likely to commit acts of sexually violent criminal behavior beyond a reasonable doubt, be confined and treated until such time that it can be determined that they no longer present a threat to society.

"The Legislature further finds and declares that while these individuals have been duly punished for their criminal acts, they are, if adjudicated sexually violent predators, a continuing threat to society. The continuing danger posed by these individuals and the continuing basis for their judicial commitment is a currently diagnosed mental disorder which predisposes them to engage in sexually violent criminal behavior. It is the intent of the Legislature that these individuals be committed and treated for their disorders only as long as the disorders persist and not for any punitive purposes." (Stats. 1995, chs. 762 & 763, § 1).

A "sexually violent predator" is defined in section 6600, subdivision (a), as "a person who has been convicted of a sexually violent offense against two or more victims for which he or she received a determinate sentence and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior."

Sexually violent offenses, for purposes of the SVP law, are listed in section 6600, subdivision (b), which provides: " 'Sexually violent offense' means the following acts when committed by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, and that are committed on, before, or after the effective date of this article and result in a conviction or a finding of not guilty by reason of insanity, as provided in subdivision (a): a felony violation of paragraph (2) of subdivision (a) of Section 261, paragraph (1) of subdivision (a) of Section 262, Section 264.1, subdivision (a) or (b) of Section 288, or subdivision (a) of Section 289 of the Penal Code, or sodomy or oral copulation in violation of Section 286 or 288a of the Penal Code."[2]

In addition, section 6600, subdivision (a) specifies that "a prior finding of not guilty by reason of insanity for an offense described in subdivision (b),

[2]Section 6600.1, subdivision (a) specifies that "[i]f the victim of an underlying offense that is specified in subdivision (b) of Section 6600 is a child under the age of 14 and the offending act or acts involved substantial sexual conduct, the offense shall constitute a 'sexually violent offense' for purposes of Section 6600."

a conviction prior to July 1, 1977, for an offense described in subdivision (b), a conviction resulting in a finding that the person was a mentally disordered sex offender, or a conviction in another state for an offense that includes all the elements of an offense described in subdivision (b), shall also be deemed to be a sexually violent offense even if the offender did not receive a determinate sentence for that prior offense."[3]

Under section 6601, if the Director of the Department of Corrections determines that a prisoner may be an SVP, the director shall refer that person for an initial screening evaluation at least six months prior to his or her scheduled release date.[4] (§ 6601, subds. (a) & (b).) If it is determined that the person is likely to be a sexually violent predator, he or she is then referred to the state Department of Mental Health for a full SVP evaluation. (§ 6601, subd. (b).)

The potential SVP is evaluated by two practicing psychiatrists or psychologists in accordance with a standardized assessment protocol. "The standardized assessment protocol shall require assessment of diagnosable mental disorders, as well as various factors known to be associated with the risk of reoffense among sex offenders. Risk factors to be considered shall include criminal and psychosexual history, type, degree, and duration of sexual deviance, and severity of mental disorder." (§ 6601, subd. (c).) If both of the evaluators find that the person "has a diagnosed mental disorder such that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody," the Department of Mental Health requests a petition for commitment under section 6602 and forwards the evaluations and supporting documents to the county of the person's latest conviction. (§ 6601, subds. (d) & (i).) If the county's designated attorney concurs with the recommendation, a petition for commitment is filed in superior court. (§ 6601, subd. (i).)

A probable cause hearing is then held before a superior court judge.[5] The individual named in the petition is entitled to assistance of counsel at this hearing. If the judge determines there is probable cause to believe that the

---

[3]As we shall discuss in part III.B.2., *post*, this provision was enacted subsequent to the filing of the petition in the instant case. (Stats. 1996, ch. 462, § 4, eff. Sept. 13, 1996.)

[4]This six-month time requirement did not apply during the first year the law was operative. (§ 6601, subd. (j).)

[5]If an inmate's parole or temporary parole hold is scheduled to expire before a probable cause hearing is conducted, the agency bringing the petition may request urgency review. (§ 6601.5.) This provision was initially added in 1996 (Stats. 1996, ch. 4, § 3, eff. Jan. 25, 1996) and amended later that year (Stats. 1996, ch. 462, § 6, eff. Sept. 13, 1996). By its own terms, former section 6601.5 was repealed effective January 1, 1998; however, it was reenacted effective April 14, 1998. (Stats. 1998, ch. 19, § 2, eff. Apr. 14, 1998.)

person is likely to engage in sexually violent predatory criminal behavior upon his or her release from prison, the judge shall order that a trial be conducted "to determine whether the person is, by reason of a diagnosed mental disorder, a danger to the health and safety of others in that the person is likely to engage in acts of sexual violence upon his or her release . . . ." (§ 6602.)

The person subject to the petition is entitled to a trial by jury, the assistance of counsel and the right to retain experts or professional persons to perform further evaluations, and is entitled to have access to all relevant medical and psychological records and reports. (§ 6603, subd. (a).) A unanimous verdict is required in any jury trial. (§ 6603, subd. (d).)

The burden of proof is on the state to show that the person is a sexually violent predator "beyond a reasonable doubt." (§ 6604.) If it is so determined, the person shall be committed for a period of two years "to the custody of the State Department of Mental Health for appropriate treatment and confinement in a secure facility . . . ." (*Ibid.*) The person shall not be kept in confinement longer than two years unless a new petition is filed and an extended commitment is obtained from the court. (*Ibid.*)

A person committed under the SVP law shall have an examination of his or her mental condition at least once every year, and is entitled to the appointment of an expert and to review all records. (§ 6605, subd. (a).) Unless the person affirmatively waives the right to a hearing, the superior court must annually set a show cause hearing to determine if the person's condition has so changed that he or she would not be a danger to the health and safety of others if released from confinement. (§ 6605, subd. (b).) If the court so finds, then the person is entitled to a full trial with the same rights and constitutional protections as were afforded at the initial commitment hearing. (§ 6605, subd. (d).) Also, at any time that the Department of Mental Health has reason to believe that the person is no longer an SVP, it must seek judicial review of the commitment. (§ 6605, subd. (f).)

Finally, the SVP can be placed on conditional release upon a finding that he or she is not likely to engage in sexually violent predatory criminal acts while under supervision and treatment in the community. (§ 6607.) A conditional release hearing may be held at any time after a year from the date of the commitment order, upon the recommendation of the Director of Mental Health or upon a petition by the SVP. (§ 6608.)

Any person committed as an SVP must be provided with treatment for his or her diagnosed mental disorder, whether or not it is found the person is

amenable to treatment. (§ 6606, subds. (a) & (b).) The treatment "shall be consistent with current institutional standards for the treatment of sex offenders . . . ." (§ 6606, subd. (c).)

## II. Factual and Procedural Background

On June 11, 1996, the District Attorney of Santa Cruz County filed a petition to commit defendant as an SVP pursuant to section 6600. The petition alleged that defendant qualified under section 6600, subdivision (b) in that he had been convicted in 1974 of a violation of "Penal Code section 261.3, Rape by Force or Threat of Violence" and, in 1976, of "first degree rape and sodomy" in Oklahoma. The petition further alleged that the Director of Corrections and the Board of Prison Terms had screened defendant at least six months prior to his date of release from prison or termination of parole, determined he was likely to be an SVP, and referred him to the Department of Mental Health. The Department of Mental Health had appointed two practicing psychiatrists or psychologists who, after evaluating defendant, determined that he had a diagnosed mental disorder and, without appropriate treatment and custody, was likely to engage in acts of sexual violence.

The evaluations, by licensed clinical psychologists Helen Steenman and Philip Cushman, were attached to the petition. Based on probation officers' reports, these evaluations reflected the following criminal history. In 1971, defendant was charged with rape of a female under the age of 18, but the charge was dismissed. In 1973, defendant was arrested for battery, vandalism, and disturbing the peace after he exposed himself and rubbed his penis against a 16-year-old female on a bus, then assaulted a passenger who told defendant to stop. He was convicted of battery and was placed on probation for 24 months.

The first alleged qualifying offense occurred in 1974. Defendant approached a woman and offered to hire her for a modeling job in his house. The woman accompanied him inside, where he wrapped a towel around her neck and showed her a knife. He instructed the woman to remove her clothes, then orally copulated her, bit her on the chest, and inserted his penis into her vagina. Defendant was convicted of rape (former Pen. Code, § 261, subd. 3) and placed on probation for 60 months.

The second alleged qualifying offense occurred in 1976, after defendant moved to Oklahoma. He rang the doorbell of a woman's house and convinced her to let him inside. He offered to pay her for sex, and when she refused he began to choke her and threatened to kill her. He orally copulated

her, forced her to orally copulate him, and had intercourse with her. In addition, defendant orally copulated the woman's son. He was convicted of rape and sentenced to five years in prison.

Upon defendant's release from prison in Oklahoma, he returned to California. In 1980, he was arrested for robbery and assault with intent to commit robbery. He hid in a woman's car and assaulted her when she entered the car. He choked her and managed to pull two gold chains from her neck before she escaped. He was sentenced to three years in prison.

In 1984, defendant was charged with assault with a deadly weapon and burglary. He entered an apartment building where he held a knife to two women. He forced his way into the apartment of one of the women by grabbing her by the throat. He choked her, pushed her to the ground, and demanded money. After fleeing, he entered another woman's apartment. He pulled her hair and held a knife to her throat. He was sentenced to eight years in prison.

In 1989, defendant was charged with residential burglary. In 1992, he was charged with kidnapping, the offense for which he was incarcerated at the time the section 6600 petition was filed. Defendant followed a woman onto and off of a bus. He grabbed her around the neck and dragged her into some bushes. He was sentenced to seven years in prison.

Both Drs. Steenman and Cushman concluded that defendant had a diagnosable mental disorder within the meaning of section 6600. According to Dr. Steenman, defendant suffered from "Alcohol dependence" and other "substance abuse." Dr. Cushman diagnosed defendant with "ALCOHOL-RELATED DISORDER, NOS, assaultive to females," "Alcohol Dependence, without Physiological Dependence," and "Polysubstance Dependence," as well as "Dysthymic Disorder" and "Personality Disorder, NOS, with Antisocial and Borderline traits." Drs. Steenman and Cushman further concluded that defendant was likely to engage in sexually violent criminal behavior as a result of these disorders.

On July 17, 1996, defendant filed a demurrer to the petition for commitment on the ground that the SVP law was unconstitutional in that it violated the constitutional prohibitions against ex post facto laws and double jeopardy and the constitutional guarantees of due process and equal protection, and on the ground that the SVP law did not apply to defendant because neither of the alleged qualifying convictions in fact invoked the statute.

The trial court sustained the demurrer without leave to amend on August 26, 1996. In its written order, the trial court ruled that the SVP law was unconstitutional because it violated the state and federal constitutional prohibition against ex post facto laws. The trial court declined to reach defendant's additional contentions.

The prosecution subsequently petitioned this court for a writ of mandate or, in the alternative, a writ of supersedeas ordering the trial court to vacate its ruling.[6] We issued a temporary stay of the proceedings and eventually issued a writ of mandate, directing the superior court to vacate its order dismissing the petition for commitment and to conduct further proceedings in the matter. In our unpublished opinion, filed on November 27, 1996, we explained that we were relying on a previous opinion of this court, wherein we upheld the SVP law against claims that it violated the ex post facto, double jeopardy, equal protection and due process provisions of the state and federal Constitutions. (*Hubbart* v. *Superior Court* (Cal.App.), review granted Feb. 26, 1997 (S052136).) Defendant petitioned the Supreme Court for review of our decision, but review was denied on February 26, 1997. We issued a remittitur which was received by the trial court on March 5, 1997.

On July 28, 1997, defendant filed a request to confront and call witnesses at the probable cause hearing. He attached to his motion a declaration indicating that some trial courts were permitting testimony at probable cause hearings, while others were not. On the same date, defendant filed a motion to dismiss the petition on the basis the statute did not apply to either of the two allegedly qualifying offenses. On August 19, 1997, the trial court denied both motions and found, on the basis of the petition and its attachments, probable cause to believe defendant was likely to engage in sexually violent predatory criminal behavior upon his release from prison.

Defendant waived jury trial. At the court trial, which commenced on September 30, 1997, the prosecution presented the testimony of Drs. Steenman and Cushman, who had conducted the initial evaluations of defendant. Dr. Steenman testified that in her written evaluation she had diagnosed defendant as suffering from alcohol and substance abuse disorders and she had "laid out . . . a case for a diagnosis which we're now calling paraphilia, NOS, rape." Although she had not made that particular diagnosis in her written evaluation, she "decided recently to add that diagnosis as well." Dr. Steenman also explained defendant's alcoholism affected his volitional ability. She testified that when drinking, defendant's "behavior gets out of

---

[6]We granted the People's motion for judicial notice of the documents associated with the writ petition.

control, and he becomes dangerous and hurts people." Defendant admitted to her that he is "unable to maintain sobriety" when out of prison, and that if he had been able to maintain sobriety, he would not have committed the qualifying offenses. According to Dr. Steenman, when defendant consumes alcohol, "he becomes predisposed to act on his paraphilic interests . . . ." Dr. Steenman opined that as a result of his disorders, defendant was "likely to continue to engage in sexually violent behavior."

Dr. Cushman explained that during his evaluation of defendant, defendant had "described himself as, basically, somebody who turns violent, that gets easily agitated; generally when he's not intoxicated, he's under better control." He explained that defendant had "little understanding of his alcoholism, little control of it, and as a result, I feel the likelihood that he would drink again is extremely high, if left to his own devices out in public. [¶] And, as he even indicated to me, that if he drinks again, he will reoffend."

The prosecution also called Michael Prodan, a special agent supervisor for the Department of Justice. Prodan testified that, based on the evaluations of Drs. Steenman and Cushman, his knowledge of defendant's criminal history, and his experience and training, he believed defendant was likely to continue to engage in sexually violent criminal behavior.

Defendant called Drs. Theodore Donaldson and Jay Jackman. Dr. Donaldson testified that he had "not seen a sex offender in this law yet that I thought was significantly impaired volitionally." Referring to defendant's crimes, he explained, "[Defendant is] a criminal. He sets up his victims. He thinks about what he's doing, and he's successful. That doesn't sound like someone who is volitionally impaired." Dr. Donaldson disagreed that defendant's alcohol disorder would predispose him to commit sexually violent acts.

Dr. Jackman opined that while defendant had two mental disorders— alcohol dependence and polysubstance dependence—he did not have a diagnosable mental disorder as defined by section 6600. Dr. Jackman explained that he had found no evidence that defendant's emotional or volitional capacity was interfered with in any way and that his crimes appeared to have been carried out with "full emotional and volitional capacity." He further explained that "[t]here is no evidence anywhere in the professional literature that says that alcohol predisposes to any kind of criminal behavior."

The trial court found defendant to be an SVP and ordered him committed to the Department of Mental Health for a period of two years from the date of his scheduled release from prison (May 14, 1996).[7]

## III. DISCUSSION

### A. *Nature of Probable Cause Hearing*

Defendant contends the trial court erred by denying his motion to confront and call witnesses at the section 6602 probable cause hearing.[8] He relies on *In re Parker* (1998) 60 Cal.App.4th 1453 [71 Cal.Rptr.2d 167], where the court concluded that a section 6602 probable cause hearing is not merely a paper review of the petition for commitment but a full evidentiary hearing similar to a preliminary hearing in criminal matters.

The *Parker* court began its analysis by looking at the "concept of 'due process.' " (*In re Parker, supra*, 60 Cal.App.4th at p. 1462.) The court acknowledged that the constitutional guarantee of due process does not specify " 'any particular form or method of procedure' " but simply requires " 'that the procedure adopted comport with fundamental principles of fairness and decency.' " (*Ibid.*, quoting *People* v. *Rojas* (1981) 118 Cal.App.3d 278, 287 [173 Cal.Rptr. 64].) Thus, the court felt it necessary to first determine "what type of hearing the Legislature envisioned when it enacted section 6602" before determining whether such a hearing sufficed for due process purposes. (*In re Parker, supra*, 60 Cal.App.4th at p. 1463.)

---

[7]The district attorney argued below that the two-year period of commitment should run from the date of the trial court's order of commitment rather than the date of defendant's scheduled release from prison, so that defendant could receive treatment for two full years. The People do not raise this issue here. However, we note that the Legislature subsequently enacted section 6604.1, which provides: "The two-year term of commitment provided for in Section 6604 shall commence on the date upon which the court issues the initial order of commitment pursuant to that section. The two-year term shall not be reduced by any time spent in a secure facility prior to the order of commitment. For subsequent extended commitments, the term of commitment shall be from the date of the termination of the previous commitment." (§ 6604.1, subd. (a).)

[8]Section 6602 provides: "A judge of the superior court shall review the petition and shall determine whether there is probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release. The person named in the petition shall be entitled to assistance of counsel at the probable cause hearing. If the judge determines there is not probable cause, he or she shall dismiss the petition and any person subject to parole shall report to parole. If the judge determines that there is probable cause, the judge shall order that the person remain in custody in a secure facility until a trial is completed and shall order that a trial be conducted to determine whether the person is, by reason of a diagnosed mental disorder, a danger to the health and safety of others in that the person is likely to engage in acts of sexual violence upon his or her release from the jurisdiction of the Department of Corrections or other secure facility."

The *Parker* court proceeded to examine section 6602 under the rules of statutory construction, beginning with the language of the statute. The court noted that ". . . the plain language of section 6602 refers not only to a review of the petition, which concededly would entail only a facial review of that document [citation], but also to the right of the person named in the petition to have an attorney and to a 'hearing' for the probable cause determination, both of which arguably imply that something more than a facial review of the petition is required [citations]." (*In re Parker, supra,* 60 Cal.App.4th at pp. 1464-1465.)

Because the language of section 6602, alone, contained an "inherent ambiguity," the *Parker* court next looked to the legislative history of the statute, but concluded that it lent "little assistance" in resolving the issue. (*In re Parker, supra,* 60 Cal.App.4th at p. 1465.) The legislative history revealed only that the provision for the assistance of counsel at the probable cause hearing was added to section 6602 after the bill was introduced. (Compare Assem. Bill No. 888 (1995-1996 Reg. Sess.) § 3, introduced Feb. 22, 1995, with Assem. Bill No. 888 (1995-1996 Reg. Sess.) § 3, as amended Apr. 25, 1995.) As the court noted, none of the analyses of Assembly Bill No. 888, nor Senate Bill No. 1143, contained an explanation of what procedures applied after this amendment.

The *Parker* court then proceeded to consider "other provisions of the Act and its general purpose" in order to "obtain a clearer view of the legislative intent." (60 Cal.App.4th at p. 1466.) The court found section 6601.5 significant to its analysis. That section provides for an "urgency review" of the petition in "cases where an inmate's parole or temporary parole hold pursuant to Section 6601.3 will expire before a probable cause hearing is conducted pursuant to Section 6602" and specifies that in conducting an "urgency review," the trial court determines whether "the petition, *on its face*, supports a finding of probable cause." (§ 6601.5, italics added.) If the trial court so determines, the potential SVP is to be "detained in a secure facility until a hearing can be held pursuant to Section 6602." (§ 6601.5.)

The *Parker* court concluded that the fact section 6601.5 specifically provides for a facial review of the petition demonstrates that "the Legislature knows how to limit consideration of the petition to only a paper review" and thus "provides support for Parker's position that it can be inferred from the fact the Legislature did not use such language in section 6602 that it did not intend to limit the probable cause determination to merely a facial review." (*In re Parker, supra,* 60 Cal.App.4th at p. 1466.) The court further concluded that "it would be superfluous to require the court to do another facial paper review of the petition and its attachments to determine probable cause after

already having done so under section 6601.5." (*Ibid.*) The court rejected the People's argument that section 6300, providing for the retaining of experts for further evaluations and access to or discovery of medical and psychological reports, "evidences an intent to make the 'trial' the main contested venue for finally determining whether a proposed SVP is truly qualified for further involuntary civil commitment" and, as such, "limits the nature or scope of the section 6602 probable cause hearing." (60 Cal.App.4th at p. 1466.)

The court next compared the language of section 6200, subdivision (a) to the language of section 6600, subdivision (a). The court found it significant that under section 6600, subdivision (a), evidence of past violent criminal conduct supporting a finding that a proposed SVP has a "diagnosed mental disorder" and a likelihood of future dangerous behavior "may be shown with documentary evidence." The court held that "[b]ecause the Legislature did not similarly provide that probable cause . . . could be shown by documentary evidence, we can infer it did not intend to limit such determination to merely the paper review the court here conducted." (*In re Parker, supra,* 60 Cal.App.4th at p. 1467.)

Next, the *Parker* court considered "other civil interim involuntary commitment proceedings . . . and various analogous criminal proceedings for a probable cause determination." (60 Cal.App.4th at p. 1467.) The court concluded that because other such proceedings generally provided more due process than accorded to the defendant, the Legislature must have intended to provide a hearing at which the proposed SVP "could be heard, not merely by pointing out legal deficiencies on the face of the petition, but also by being able to effectively challenge the facts on which the petition was filed." (*Id.* at p. 1468.) The court reasoned that if such procedures were not permitted, the government would be able to dispose of a defendant's liberty interest without offering him a significant opportunity to be heard, thereby infringing on the defendant's due process rights. (*Id.* at pp. 1468-1469.)

The *Parker* court ultimately concluded that "common sense and fairness dictate that [a section 6200 probable cause] hearing should allow the admission of both oral and written evidence." (60 Cal.App.4th at p. 1469.) The court specified that the prosecution could present its evidence through the hearsay reports of the experts, but that the defendant should be permitted to call and cross-examine those experts, as well as other witnesses on his behalf. (*Id.* at pp. 1449-1470.) Additionally, reiterating that the SVP act "does not specifically provide any procedural requirements," the court encouraged "either the Supreme Court or the Legislature to fill the procedural gap in section 6602 by describing the specific procedures to ensure fairness for all SVP cases . . . ." (*Ibid.*)

██ We agree with *Parker*'s analysis and conclusion. Here, the trial court erred by simply conducting a facial review of the commitment petition at the probable cause hearing. The People in fact concede that "[u]nder *Parker*, [defendant] arguably was denied a full evidentiary hearing on probable cause," but argue that the error does not require reversal, because defendant was permitted to present witnesses and cross-examine the prosecution's witnesses at trial.

In examining the effect of the trial court's error in failing to provide defendant a full probable cause hearing, we look to analogous criminal proceedings. In *People* v. *Pompa-Ortiz* (1980) 27 Cal.3d 519 [165 Cal.Rptr. 851, 612 P.2d 941], the court concluded that the denial of the right to a public preliminary hearing requires reversal only if the defendant makes a showing "that he was denied a fair trial or otherwise suffered prejudice." (*Id.* at p. 530; see *In re Parker, supra*, 60 Cal.App.4th at p. 1468 [section 6602 probable cause hearing is analogous to preliminary hearing in criminal cases].) The court reasoned that if the defendant had raised the issue before trial, the matter could have been "expeditiously returned to the magistrate for proceedings free of the charged defects." (*People* v. *Pompa-Ortiz, supra*, 27 Cal.3d at p. 529; cf. *In re Parker, supra*, 60 Cal.App.4th 1453 [issue raised by pretrial writ].) Because the error did not affect the defendant's actual trial, which was open to the public, it did not require reversal. (*People* v. *Pompa-Ortiz, supra*, 27 Cal.3d at p. 530.)

While *Pompa-Ortiz* was a criminal case, and proceedings under the SVP law are not criminal in nature (see *In re Parker, supra*, 60 Cal.App.4th at p. 1461), its rationale has been applied in other cases involving pretrial civil proceedings. Thus, in *Waller* v. *TJD, Inc.* (1993) 12 Cal.App.4th 830, 834 [16 Cal.Rptr.2d 38], the court relied, in part, on *Pompa-Ortiz* in concluding that although the trial court may have erred by denying the defendant's pretrial motion for summary judgment, the error did not require reversal because the defendant had received a fair jury trial and the jury's verdict was supported by substantial evidence.

Here, defendant failed to seek pretrial review of the trial court's ruling as to the nature of the section 6602 probable cause hearing. He was found to be an SVP after a trial at which he was able to cross-examine the prosecution's witnesses and call his own witnesses. As he "makes no showing that he was denied a fair trial or otherwise suffered prejudice," reversal is not warranted. (*People* v. *Pompa-Ortiz, supra*, 27 Cal.3d at pp. 529, 530.)

B. *Sufficiency of the Evidence*

██ Defendant contends there was insufficient evidence to support the trial court's finding that he fell within the parameters of the SVP law. He

argues neither his 1974 conviction nor his 1976 conviction were qualifying offenses under section 6600, subdivisions (a) and (b).[9] Defendant further argues that there was no evidence he had a "diagnosed mental disorder" (§ 6600, subd. (c)) because the prosecution failed to show that defendant's volitional capacity was impaired.

## 1. *1974 Conviction*

As noted previously, the petition for commitment alleged that defendant had a 1974 conviction of "Penal Code section 261.3, [*sic*] Rape by Force or Threat of Violence" (hereafter former Penal Code section 261, subdivision 3). Defendant contends the trial court erred in sustaining the petition on the basis of that allegation, as former Penal Code section 261, subdivision 3 is not one of the qualifying offenses enumerated in section 6600, subdivision (b).[10]

The People argue that defendant's argument "exalts form over substance." They contend that former Penal Code section 261, subdivision 3 defines the same crime as Penal Code section 261, subdivision (a)(2), which is a qualifying offense under section 6600, subdivision (b). Penal Code section 261, subdivision (a)(2) describes the crime of rape "by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." Penal Code section 261, subdivision (b) defines "duress" as "a direct or implied threat of force, violence, danger, or retribution" and Penal Code section 261, subdivision (c) defines "menace" as "any threat, declaration, or act which shows an intention to inflict an injury upon another."

In 1974, Penal Code section 261 provided, in pertinent part: "Rape is an act of sexual intercourse, accomplished with a female not the wife of the

---

[9]In his opening brief, defendant anticipated that respondent would contend defendant waived this argument because, at trial, defense counsel stipulated that the 1974 and 1976 convictions were qualifying offenses. Defendant therefore argued that if the argument was waived by the stipulation, defense counsel was ineffective. However, respondent conceded that defendant did not waive this argument, noting that defendant raised the issue in both his demurrer and his motion to dismiss. Thus, in his reply brief, defendant acknowledged that respondent's position rendered his ineffective assistance claim moot.

[10]Section 6600, subdivision (b) provides, in pertinent part: " 'Sexually violent offense' means the following acts when committed by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, and that are committed on, before, or after the effective date of this article and result in a conviction or a finding of not guilty by reason of insanity, as provided in subdivision (a): a felony violation of paragraph (2) of subdivision (a) of Section 261, paragraph (1) of subdivision (a) of Section 262, Section 264.1, subdivision (a) or (b) of Section 288, or subdivision (a) of Section 289 of the Penal Code, or sodomy or oral copulation in violation of Section 286 or 288a of the Penal Code."

perpetrator, under *either* of the following circumstances: [¶] . . . [¶] 3. Where she is prevented from resisting by threats of great and immediate bodily harm, accompanied by apparent power of execution, *or* by any intoxicating narcotic, or anesthetic, substance, administered by or with the privity of the accused." (Stats. 1970, ch. 1301, § 1, p. 2405, italics added.)

Penal Code section 261 was amended in 1980 to separately define the two crimes included in former Penal Code section 261, subdivision 3. (Stats. 1980, ch. 587, § 1, pp. 1595-1596.) Penal Code section 261 now provides, in pertinent part: "(a) Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances: [¶] . . . [¶] (2) Where it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another. [¶] (3) Where a person is prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance, and this condition was known, or reasonably should have been known by the accused. [¶] . . . [¶] (b) As used in this section, 'duress' means a direct or implied threat of force, violence, danger, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to perform an act which otherwise would not have been performed, or acquiesce in an act to which one otherwise would not have submitted. . . . [¶] (c) As used in this section, 'menace' means any threat, declaration, or act which shows an intention to inflict an injury upon another."

Because former Penal Code section 261, subdivision 3 included both the crime of rape by force or threat of violence, which is now defined in Penal Code section 261, subdivision (a)(2), and the crime of rape accomplished because the victim was under the influence of a controlled substance, which is now defined in Penal Code section 261, subdivision (a)(3), we must determine whether defendant's 1974 conviction was equivalent to Penal Code section 261, subdivision (a)(2), which *would* be a qualifying offense under the SVP law, or equivalent to Penal Code section 261, subdivision (a)(3), which would *not* be a qualifying offense under the SVP law. This issue is quickly resolved. The documents entered into evidence proving the 1974 conviction specify that defendant was convicted of rape by force or threat of violence rather than rape accomplished because the victim was under the influence of a controlled substance. First, the information alleged that defendant "accomplished an act of sexual intercourse with a female who was not his wife, who was prevented from resisting by his threats of great and immediate bodily harm, accompanied by apparent power of execution." Second, the description of the offense contained in the probation report clarifies that the rape was accomplished by force or threat of violence: defendant displayed a knife to the victim, and then committed oral copulation and rape.

Having concluded defendant's 1974 conviction of former Penal Code section 261, subdivision 3 is equivalent to a conviction of Penal Code section 261, subdivision (a)(2), we next consider whether section 6600 applies to that conviction in light of the fact former Penal Code section 261, subdivision 3 is not specifically listed in section 6600, subdivision (b).

■ "The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.] In order to determine this intent, we begin by examining the language of the statute. [Citations.] But '[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' [Citations.] Thus, '[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' [Citation.] Finally, we do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]" (*People* v. *Pieters* (1991) 52 Cal.3d 894, 898-899 [276 Cal.Rptr. 918, 802 P.2d 420].)

■ As defendant points out, taken literally, the statute does not apply to a conviction of former Penal Code section 261, subdivision 3. However, to give the statute this literal meaning, which would exempt from the SVP law persons convicted under that statute, would certainly result in absurd consequences which the Legislature did not intend. The intent of the Legislature in enacting the SVP law and in specifying that one of the qualifying prior offenses was a violation of Penal Code section 261, subdivision (a)(2) was to include persons with prior convictions of rape "by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury upon the person of another." As previously explained, a conviction of rape by force or threat of force under former Penal Code section 261, subdivision 3 would, today, be punishable under Penal Code section 261, subdivision (a)(2). We conclude the Legislature intended to include in section 6600, subdivision (b) prior convictions which occurred before Penal Code section 261 was amended to its current form but which included all the elements of an offense described by Penal Code section 261, subdivision (a)(2).[11]

### 2. *1976 Conviction*

Defendant contends that his 1976 Oklahoma conviction for rape was not a qualifying offense under section 6600 because at the time of the petition, the

---

[11]We respectfully invite the Legislature to consider amending section 6600 to clarify that a conviction suffered under a predecessor statute to those statutes enumerated in section 6600, subdivision (b) which includes all the elements of an offense described in section 6600, subdivision (b) shall also be deemed to be a sexually violent offense.

SVP law defined "sexually violent offense" by reference only to certain California Penal Code provisions. (§ 6600, subds. (a) & (b), as enacted, Stats. 1995, chs. 762 & 763, § 1.) Section 6600, subdivision (a) now provides that "a conviction in another state for an offense that includes all the elements of an offense described in subdivision (b), shall also be deemed to be a sexually violent offense." This provision was added after the petition was filed but prior to trial. (Stats. 1996, ch. 462, § 4, eff. Sept. 13, 1996.) We will assume that the applicable law is the version of the statute in effect at the time the petition was filed rather than the version of the statute in effect at the time of trial, under which defendant concedes the 1976 conviction would be a qualifying offense.

Respondent again invokes the rule that " 'language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' " (*People* v. *Pieters, supra*, 52 Cal.3d at pp. 898, quoting *Younger* v. *Superior Court* (1978) 21 Cal.3d 102 [145 Cal.Rptr. 674, 577 P.2d 1014].) Respondent argues that even before the amendment regarding out-of-state convictions was enacted, the Legislature intended the SVP law to cover foreign convictions for offenses which, if committed in California, would be qualifying offenses. Respondent contends the amendment was intended only to clarify, rather than expand, the statute.

Respondent cites *People* v. *Johnson* (1995) 33 Cal.App.4th 623 [39 Cal.Rptr.2d 463] in support of this argument. In *Johnson*, the court considered whether Penal Code section 667.6, subdivision (b), which provided for a 10-year enhancement where the defendant had 2 prior convictions of certain enumerated offenses, applied to foreign convictions. Like the version of section 6600 we are concerned with here, Penal Code section 667.6, subdivision (b) enumerated only California Penal Code offenses. The court concluded that to interpret the law as applying only to California convictions "would result in absurd consequences which the Legislature could not have intended." (33 Cal.App.4th p. 632.)

Defendant attempts to distinguish *Johnson* by pointing to its discussion of Penal Code section 668, which provides that foreign convictions may be used for the purpose of sentencing enhancements where the offenses, if committed in California, would have resulted in convictions which qualified for such use.[12] *Johnson* explained that section 668 and section 667.6 were in pari materia and that it would contradict section 668 to interpret section

---

[12] Penal Code section 668 provides: "Every person who has been convicted in any other state, government, country, or jurisdiction of an offense for which, if committed within this state, that person could have been punished under the laws of this state by imprisonment in a state prison, is punishable for any subsequent crime committed within this state in the manner

667.6 as prohibiting the use of foreign prior convictions for the particular sentencing enhancements provided in section 667.6. (*People* v. *Johnson, supra,* 33 Cal.App.4th at pp. 632-633.)

Penal Code section 668 does not apply in the instant case, as it refers to punishment for crimes and thus applies only to sentencing schemes and not to commitments under the SVP law. (See *People* v. *Lang* (1989) 49 Cal.3d 991, 1038 [264 Cal.Rptr. 386, 782 P.2d 627]; *People* v. *Pensinger* (1991) 52 Cal.3d 1210, 1261 [278 Cal.Rptr. 640, 805 P.2d 899].) However, the *Johnson* court did not rely only on section 668. Rather, its primary focus was the fact that to read Penal Code section 667.6 literally "would be directly contrary to the express purposes of section 667.6, i.e., attacking the recidivism of violent sex offenders by providing for longer enhancements for prior convictions of the same type of offense, irrespective of where, or in which jurisdiction, the prior crimes were perpetrated." (*People* v. *Johnson, supra,* 33 Cal.App.4th at p. 632.).

The same rationale applies here. A strict construction of section 6600 as it read at the time the commitment petition was filed would result in absurd consequences which the Legislature could not have intended. To exempt from the SVP law persons who committed their prior offenses in another jurisdiction would fail to satisfy the purposes of the SVP law, i.e., to identify, confine, and treat individuals who have diagnosable mental disorders which predispose them to engage in sexually violent criminal behavior. Thus, we believe that even prior to the 1996 amendment to section 6600, subdivision (a), the Legislature intended the statute to apply to persons with foreign offenses which included all of the elements of the California offenses enumerated in section 6600, subdivision (b).

The legislative history of the 1996 amendment to section 6600, subdivision (a) demonstrates the amendment was intended to clarify the statute rather than simply to enlarge its application. A report of the Assembly Committee on Public Safety on Assembly Bill No. 3130, 1995-1996 Regular Session, specified that, according to the proponents of the bill, the amendments were necessary "to clarify a few unclear provisions governing the civil commitment of sexually violent predators." (Assem. Com. on Pub. Safety, Rep. on Assem. Bill No. 3130 (1995-1996 Reg. Sess.) Apr. 29, 1996.) Similarly, a Senate committee report on Assembly Bill No. 3130 specified that the "[e]xpressed purpose of the bill" was to clarify several

---

prescribed by law and to the same extent as if that prior conviction had taken place in a court of this state. The application of this section includes, but is not limited to, all statutes which provide for enhancements for prior convictions and prior prison terms."

issues. (Sen. Com. on Crim. Proc., Rep. on Assem. Bill No. 3130 (1995-1996 Reg. Sess.) as amended May 24, 1996.)[13] Finally, the fact the 1996 amendment took effect immediately upon approval, as urgency legislation, further supports the conclusion that it was intended to clarify rather than expand the application of the SVP law. (See *Western Security Bank* v. *Superior Court* (1997) 15 Cal.4th 232, 243 [62 Cal.Rptr.2d 243, 933 P.2d 507]; *People* v. *Jenkins* (1995) 10 Cal.4th 234, 248 [40 Cal.Rptr.2d 903, 893 P.2d 1224].)

## C. *Diagnosed Mental Disorder*

■ Defendant contends that there was insufficient evidence he had a "diagnosed mental disorder." (§ 6600, subd. (c).) He cites *Kansas* v. *Hendricks* (1997) 521 U.S. 346 [117 S.Ct. 2072, 138 L.Ed.2d 501] (*Hendricks*) for the proposition that the SVP law requires evidence that the person demonstrate a "lack of volitional control." Defendant argues that here, there was no evidence that his diagnosed mental disorder impaired him "to such a degree he has no control over his behavior."

In *Hendricks*, the United States Supreme Court considered whether Kansas's Sexually Violent Predators Act (Kan. Stat. Ann. § 59-29a01 et seq.) satisfied due process. The court noted that in order to satisfy constitutional concerns, the act had to require evidence of the SVP's dangerousness as well as "the proof of some additional factor, such as a 'mental illness' or 'mental abnormality.'" (*Hendricks, supra*, 521 U.S. at p. 347 [117 S.Ct. at p. 2080, 138 L.Ed.2d at pp. 512-513].) The court explained that such additional requirements "serve to limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control." (*Ibid.*)

The defendant argued that although the Kansas statute required a "mental abnormality" or a "personality disorder," the Supreme Court's earlier cases had required a "mental illness" and that the legislatively coined term "mental abnormality" did not satisfy that requirement. The court disagreed that the term "mental illness" had "any talismanic significance" and concluded that the Kansas statute's definition of "mental abnormality" set forth "criteria relating to an individual's inability to control his [or her] dangerousness" which was comparable to the criteria set forth in other civil commitment

---

[13]The report stated that, according to the bill's author: "Last year the Governor signed into law [Assembly Bill No.] 888 (Rogan), which allowed for the civil commitment of sexually violent predators. However, there are several issues which need to be clarified regarding the operation of the new law. This bill serves that purpose by proposing several clean-up provisions."

statutes the court had considered and approved. (*Hendricks, supra,* 521 U.S. at p. 360 [117 S.Ct. at p. 2080, 138 L.Ed.2d at p. 513].) The court further concluded that the defendant's condition satisfied the criteria: "The mental health professionals who evaluated Hendricks diagnosed him as suffering from pedophilia, a condition the psychiatric profession itself classifies as a serious mental disorder. [Citations.] Hendricks even conceded that, when he becomes 'stressed out,' he cannot 'control the urge' to molest children." (*Ibid.,* fn. omitted.)

Importantly, the Kansas statute's definition of "mental abnormality" was nearly identical to section 6600's definition of "diagnosed mental disorder,"[14] and the evidence supporting a finding that defendant fell within that definition was similar to the evidence present in *Hendricks.* Dr. Steenman testified that defendant suffered from paraphilia and defined that term as "any deviant sexual interest." She explained paraphilia would include pedophilia, the diagnosis made in *Hendricks.* Dr. Steenman further testified that when defendant consumed alcohol, his "behavior gets out of control, and he becomes dangerous and hurts people." Likewise, Dr. Cushman testified that defendant was "under better control" when he was sober and that he had "little control" of his alcoholism. Defendant himself admitted he was "unable to maintain sobriety" when out of prison, and that he would not have committed the 1974 or 1976 offenses "[i]f he hadn't used alcohol." As noted above, in *Hendricks,* the United States Supreme Court found it significant that the defendant had similarly "conceded that, when he becomes 'stressed out,' he cannot 'control the urge' to molest children." (*Hendricks, supra,* 521 U.S. at p. 360 [117 S.Ct. at p. 2081, 138 L.Ed.2d at p. 514].)

Defendant acknowledges that there was evidence he suffered from alcoholism and that he was intoxicated when he committed the 1974 and 1976 sex offenses, but points out that there was no evidence he committed sex offenses every time he consumed alcohol. We do not believe this fact places defendant outside the criteria for a diagnosed mental disorder. It was sufficient for the People to show that defendant suffered from paraphilia and that his alcoholism caused him to lose control, become dangerous to others, and become predisposed to act on his paraphilic interests. There was substantial evidence supporting the trial court's determination.

---

[14]Section 6600, subdivision (c) provides: " 'Diagnosed mental disorder' includes a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others." Kansas's SVP law defined "mental abnormality" as "a 'congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others.' " (*Hendricks, supra,* 521 U.S. at p. 352 [117 S.Ct. at p. 2077, 138 L.Ed.2d at p. 509].)

## D. *Constitutionality of SVP Law*

Defendant claims that the SVP Act is unconstitutional in that it violates the state and federal constitutional prohibitions against ex post facto laws (U.S. Const., art. I, § 9; Cal. Const., art. I, § 9) and the state and federal constitutional guarantees of equal protection and due process (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7). These questions are currently pending before the California Supreme Court.[15]

We previously addressed the issue of the SVP law's constitutionality in our opinion accompanying the writ of mandate we issued upon the People's petition earlier in this case. As we have explained, in that writ opinion we relied on our previous opinion in *Hubbart* v. *Superior Court, supra,*\* review granted Feb. 26, 1997 (S052136). Defendant sought review of our decision, but on the same day the Supreme Court granted review in *Hubbart*, the court denied review of our writ opinion in this case.

The People argue that we cannot reconsider our previous order under the "law of the case" doctrine. ■ " 'The doctrine of the law of the case is this: That where, upon an appeal, the supreme court, in deciding the appeal, states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal, and, as here assumed, in any subsequent suit for the same cause of action, and this although in its subsequent consideration this court may be clearly of the opinion that the former decision is erroneous in that particular.' " (*People* v. *Shuey* (1975) 13 Cal.3d 835, 841 [120 Cal.Rptr. 83, 533 P.2d 211], quoting *Tally* v. *Ganahl* (1907) 151 Cal. 418, 421 [90 P. 1049]; see also *Kowis* v. *Howard* (1992) 3 Cal.4th 888, 892-893 [12 Cal.Rptr.2d 728, 838 P.2d 250].) The doctrine of law of the case applies "to decisions of intermediate appellate courts as well as courts of last resort." (*People* v. *Shuey, supra,* 13 Cal.3d at p. 841.)

Defendant concedes the law of the case doctrine applies here, explaining that he raises the issues simply to preserve his right to raise them in a petition for review in the California Supreme Court.

---

[15]*People* v. *Superior Court (Cain)* (1996) 49 Cal.App.4th 1164 [57 Cal.Rptr.2d 296], review granted February 5, 1997 (S057272); *Garcetti* v. *Superior Court* (1996) 49 Cal.App.4th 1533 [57 Cal.Rptr.2d 420], review granted February 5, 1997 (S057336); *Hubbart* v. *Superior Court, supra,*\* review granted February 26, 1997 (S052136); *People* v. *Hedge* (1997) 56 Cal.App.4th 773 [65 Cal.Rptr.2d 693], review granted October 29, 1997 (S063954); *People* v. *Putney* (1997) 57 Cal.App.4th 739 [67 Cal.Rptr.2d 283], review granted December 23, 1997 (S065144).

\*See Reporter's Note, *supra,* at page 430.

## DISPOSITION

The judgment is affirmed.

Wunderlich, J., and Mihara, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 24, 1999.