[No. H018530. Sixth Dist. Feb. 22, 1999.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
JERRY HOWARD, Real Party in Interest.

**COUNSEL**

George W. Kennedy, District Attorney, and Dana Overstreet, Deputy District Attorney, for Petitioner.

No appearance for Respondent.

Jose R. Villarreal, Public Defender, and Stefan Kennedy, Deputy Public Defender, for Real Party in Interest.

OPINION

COTTLE, P. J.—

## I. INTRODUCTION

After the probable cause hearing, respondent court dismissed the People's petition for civil commitment of real party in interest Jerry Howard (hereafter, Howard) as a sexually violent offender under the Sexually Violent Predators Act (Welf. & Inst. Code, § 6600 et seq.).[1] The court ruled that due process would be violated if the victim hearsay statements contained in the probation reports were admitted to prove that Howard had committed two or more sexually violent offenses, and that the admissible evidence contained in Howard's records of prior convictions was insufficient proof. The People seek review of the dismissal order by way of a petition for writ of mandate.

We agree with the People that the Sexually Violent Predators Act expressly allows the People to prove that a defendant has committed sexually violent offenses through hearsay evidence, including victim hearsay statements contained in probation reports. We also agree that the admission of such hearsay evidence at the probable cause hearing does not violate due process, because the defendant has the opportunity to challenge the evidence. We therefore grant the People's petition for writ of mandate as requested, and issue a peremptory writ directing respondent court to vacate its order dismissing the petition, and to enter a new order detaining Howard in a secure facility pending further proceedings in accordance with the views expressed in this opinion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Howard's Sex Offenses*

Howard has five convictions for sex crimes which potentially qualify him as a sexually violent predator subject to civil commitment under the Sexually Violent Predators Act (§ 6600 et seq.; hereafter, SVP Act, or Act). Information about each conviction and the underlying sex offense is found in both the conviction record and the probation reports for each offense, as follows.

### 1. *1987 Violation of Penal Code Section 261.5*

On February 26, 1987, Howard pleaded guilty in Lassen County Justice Court to violating Penal Code section 261.5, unlawful sexual intercourse

---

[1] All statutory references are to the Welfare and Institutions Code, unless otherwise noted.

with a minor. While entering his guilty plea, Howard stated on the record, "I had intercourse with Angel R[.]" He also admitted that he knew she was under 18 years of age. The probation report filed March 18, 1987, added further details of the offense, which were drawn from the police officer reports and the probation officer's interview with Angel R.

According to the probation officer, Angel R. lived across the street from the motel which Howard managed. The police officer who spoke with Angel R. reported that Howard "had forced sex with her . . . he grabbed her, pushed her back on [a motel] bed, held his hand over her mouth, removed her pants and had intercourse with her." At the time of this incident, Angel R. was 15 years old.

Angel R. also told the police officer that Howard had forced her to have sex a second time, and they also had consensual intercourse on five or six occasions. The probation officer further reported that Angel R. stated that she went along with Howard on the other occasions because she was afraid of being hurt. Howard was also interviewed by the probation officer. The officer reported that Howard said that "what he did was wrong but it wasn't all his fault. The girls came on to him and he was gullible."

### 2. *1987 Violation of Penal Code Section 288, Subdivision (a)*

Also on February 26, 1987, Howard pleaded guilty in Lassen County Justice Court to a violation of Penal Code section 288, subdivision (a), lewd conduct with a child under the age of 14. The child was Angel R.'s 13-year-old sister, Toni S. While entering his guilty plea, Howard admitted that he had fondled Toni S.'s groin area. The probation report filed March 18, 1987, summarizes the police officer's interview with Toni S. as follows: "During the interview, she told the officer that the defendant had made her orally copulate him once and he had attempted sex on two (2) other occasions without penetration, but she was able to feel his penis against her vagina." The officer commented that it was "quite apparent" that she was a 13-year-old girl.

During his interview with the probation officer, Howard stated that Toni S. had called him numerous times and sent him a love letter. When he spoke to the police officer, Howard denied that he had used force with either Toni S. or Angel R.

### 3. *1987 Violation of Penal Code Section 288a, Subdivision (b)(2)*

Howard pleaded guilty to a third sex offense on February 26, 1987, in Lassen County Justice Court: violation of [then] Penal Code section 288a,

subdivision (b)(2), oral copulation with a person under 16 years of age. While entering his guilty plea, Howard stated on the record, "It's what she did. I didn't have oral sex with her, she had oral sex with me. She put her mouth on my penis."

As discussed above, the probation report of March 18, 1987, included further details about the offense. Toni S. told the police officer that Howard "made her" orally copulate him once, while Howard claimed that he never used force.

Following his guilty pleas in Lassen County, Howard was sentenced to three years in state prison. The sentence was stayed and Howard was placed on probation. However, his probation was revoked in 1988 and the sentence reinstated. After approximately two years of incarceration, Howard was released from the California Department of Corrections on parole in September 1988.

4. *1991 Violation of Penal Code Section 288, Subdivision (a)*

On November 22, 1991, Howard pleaded no contest in Santa Clara County Superior Court to violation of Penal Code section 288, subdivision (a), committing a lewd act upon the person of Violet G., a child under the age of 14 years. No details of the offense were included in the transcript of the plea, other than the court's statement that "There is a factual basis in the police reports."

However, the probation report of December 24, 1991, contains many details about this offense and the surrounding circumstances. After interviewing Danielle C., age eight, foster sister Violet G., age nine, and their family members, the investigating police officers reported that Howard had committed sex offenses with both Violet and Danielle after insinuating himself into the family. Howard had been called to do plumbing repair at the family residence. He worked on the plumbing problem for many weeks and became friendly with the family, to the extent that he was invited by Danielle's mother to stay the night while his wife was in a nearby hospital giving birth.

Afterwards, Violet told a police officer that she had sexual encounters with Howard during the night. According to the probation report, Violet recalled that "[a]t approximately 3 a.m. [Howard] came into the two girls' bedroom and awakened Violet. He first touched her chest over her clothing, then lifted the waistband of her pajamas and shined a light between her legs. . . . [H]e picked her up and carried her and when they arrived in the

living room he sat her down 'hard on his lap.' His hand was on her 'private' over her clothing."

Violet also told the police officer that she had another encounter with Howard during the night. "At approximately 4 a.m., she got up to use the bathroom and [Howard] followed her. When they got into the bathroom [Howard] locked the door and made her sit on his lap. He then stood up and pulled his underwear down and exposed his penis."

When interviewed by the probation officer, Howard stated that Violet's account was not true. According to Howard, their encounters that night were not sexual. Howard told the probation officer that, "During the night Violet got up and walked in on [him] in the bathroom while he was urinating. He did not 'expose himself,' she simply saw him urinating. The two then went into the living room and chatted for awhile as Violet was having difficulty sleeping." Howard also told the probation officer that Violet might be motivated to lie because she was an unhappy foster child who wished to return to her natural mother.

The probation officer also reported that Danielle's mother stated that after Howard's arrest, she called another plumber to finish Howard's plumbing repairs, and the second plumber finished the job in 45 minutes. The probation officer concluded, "It is the opinion of this officer that the defendant carefully selected this family, and deliberately and cleverly set them up to be his victims."

### 5. *1991 Violation of Penal Code Section 288, Subdivision (a)*

On November 22, 1991, Howard pleaded guilty in Santa Clara County Superior Court to a second charge of violating Penal Code section 288, subdivision (a), committing a lewd act upon the body of Danielle C., a child under the age of 14 years. Again, no factual basis for the plea was included in the conviction record, other than the court's statement that "There is a factual basis in the police reports."

Much more detail is contained in the probation report. The offense involving Danielle took place the same night as that involving her sister Violet, when Howard slept in their home. According to the probation report, Danielle told a police officer that Howard "came into her bedroom at approximately 1 a.m. . . . . [H]e placed Danielle's hand on his penis and moved it up and down. She described his penis as looking soft at first and then hard and about six to eight inches long. [Howard] then licked Danielle's chest and private parts and inserted his tongue inside her vagina."

During a later interview with police, Danielle recalled further details. She told the detective that "she had forgotten some of the things [Howard] had done mainly because she did not want to say them." In addition to the sexual encounter she had previously reported, Danielle now remembered that Howard came into her room "and tried to awaken her by putting 'his thing' into her mouth. . . . She pretended to be asleep, however, [he] began touching her private parts with his hand and shaking her to awaken her. When she was awake [he] climbed into her bed with her, removed her underwear, pulled his underwear down, and then stuck his 'private part' into her 'private part.' When Danielle told [Howard] that this hurt and for him to stop, he answered 'Just wait a minute.' " The probation officer also provided the court with a copy of a medical report concerning Danielle, which stated that a physical exam performed two months after the incident revealed evidence of vaginal penetration.

When questioned by the probation officer with regard to Danielle, Howard denied any improper contact, and told the officer that Danielle had been coached by her mother to make accusations to ensure that he would go to prison. After entering his guilty pleas, Howard was sentenced to 11 years in state prison with 3 years' parole. A parole date of May 24, 1997, was set for Howard's release from San Quentin prison.

B. *Proceedings Under the SVP Act*

Howard was not paroled on May 24, 1997. Instead, proceedings were begun under the SVP Act. The Board of Prison Terms held a hearing to determine whether there was probable cause to believe Howard a sexually violent predator. After finding probable cause, the Board of Prison Terms placed a section 6601.3 45-day hold on Howard to detain him for review by the State Department of Mental Health and a possible evidentiary hearing in superior court.

The Santa Clara County District Attorney's office then filed a petition to commit Howard as a sexually violent offender, pursuant to the SVP Act. The People stated in the petition that Howard qualified for commitment as a sexually violent predator because he had committed two violations of Penal Code section 288, subdivision (a) which involved force or duress against two separate victims, and because review of the Department of Mental Health evaluations indicated that Howard has a mental disorder which renders him a danger to the health and safety of others, within the meaning of the SVP Act.

As a result of the People's SVP petition, a probable cause hearing was held in superior court in July 1997. At the hearing, the court heard oral

argument and admitted the four written psychological evaluations of Howard which were attached to the People's petition. The four evaluations were based upon the psychologists' review of Howard's criminal record, including the probation reports, and also upon their interviews with Howard.

Jonathan E. French, Ph.D., concluded that Howard met the section 6600, subdivision (a) criteria for a sexually violent predator, because he had been convicted of sexually violent and predatory offenses against two or more victims, and because he had a mental disorder, "pedophilia, sexually attracted to females, non-exclusive type," which rendered him likely to reoffend.

The second evaluator, Charles W. Jackson, Ph.D., reached a similar opinion, as did a third evaluator, Sheryl B. Hausman, Ph.D. However, the fourth evaluator, Melvin Macomber, Ph.D., came to a different conclusion. Dr. Macomber reported that Howard did not meet the statutory criteria for a sexually violent predator because he had not been convicted of sexually violent predatory crimes involving two or more victims. In Dr. Macomber's view, the crimes were not predatory as none of the children were strangers to Howard.

On July 29, 1997, the superior court issued an order finding that probable cause existed to detain Howard for trial as a sexually violent predator. However, the order was vacated on March 3, 1998, so that a new probable cause hearing could be held in accordance with the recent decision in *In re Parker* (1998) 60 Cal.App.4th 1453 [71 Cal.Rptr.2d 167] (holding defendant must be allowed to cross-examine the People's expert witnesses in a SVP Act hearing).

The second probable cause hearing was held in superior court on March 5, 1998. Both Howard and the People were represented by counsel. Howard's counsel submitted points and authorities in opposition to a finding of probable cause to commit Howard as an SVP. In support of a probable cause finding, the People submitted documentary evidence, including complaints, informations, abstracts of judgment, transcripts of Howard's pleas and sentencing hearings, probation reports, and all four psychologists' evaluations.

After the People's documentary evidence was received, Howard's attorney called two of the evaluating psychologists, Dr. French and Dr. Hausman, as witnesses and cross-examined them about their opinions concerning Howard. The court took the matter under submission, and issued its order of May 7, 1998, finding that no probable cause existed to detain Howard for trial as a SVP. The order released Howard from custody and ordered him to immediately report to parole.

C. *The Order After Probable Cause Hearing*

In a thorough written order, the court explained its reasoning in finding that no probable cause existed to detain Howard for trial as a sexually violent predator. The court reasoned, "[g]iven the great liberty interest at stake, this court can find no rationale to treat the proof of Section 6600(b) elements [of sexually violent offenses] any differently from the proof of the elements of prior convictions in criminal cases."

Relying on *People* v. *Reed* (1996) 13 Cal.4th 217 [52 Cal.Rptr.2d 106, 914 P.2d 184], the court pointed out that hearsay contained within a probation officer's report is inadmissible to prove a prior conviction in a criminal trial. The court concluded that, likewise, hearsay victim statements contained in a probation officer's report cannot be admitted to prove that a defendant's prior convictions qualify as sexually violent offenses under the SVP Act, without violating due process. In so ruling, the court emphasized that Howard's "substantial private interest of liberty" was at stake in the probable cause hearing, noting that, "If the court were to make an erroneous determination of probable cause, he will remain in custody until a trial is held, thus causing him to lose his liberty for a substantial period of time. The safeguard of prohibiting inadmissible hearsay, yet allowing the trier of fact to look to the entire record of conviction to determine the elements of the prior conviction, is both fair and reasonable."

Thus, despite the trial court's finding that the People had established that "Howard is a pedophile, that he had a predatory relationship with all three of the victims and that there is probable cause to believe that he is likely to re-offend," the court concluded that there was not probable cause to detain Howard under the SVP Act. In the court's view, the People's proof that Howard's convictions constituted sexually violent offenses within the meaning of the SVP Act consisted only of evidence which was inadmissible because it was outside the record of Howard's prior convictions, that is, the inadmissible victim hearsay statements contained in the probation reports.

In its order, the court noted that its ruling restricting the People's evidentiary showing to the face of a defendant's conviction record will have a negative impact on the People's ability to obtain civil commitments of sexually violent predators. The court commented that "where the victims never testified, and where, as here, the prospective SVP has denied any wrongdoing so there are no admissions, the prosecution has a difficult hurdle. Indeed, the hurdle may be impossible to overcome."

The People petitioned for a writ of mandate directing the trial court to vacate the order after probable cause hearing and to detain Howard pending

the outcome of another probable cause hearing. We issued a temporary stay of the order after probable cause hearing, and an alternative writ and order to show cause why the relief requested should not be granted.

## III. DISCUSSION

### A. *Writ Review Is Justified Under the Circumstances of This Case*

■ Howard argues that the People's petition for a writ of mandate is improper, on grounds that the People may not seek review of ordinary judicial error, and the trial court did not abuse its discretion in dismissing the People's petition to commit Howard as a sexually violent predator. Howard also asserts that the order dismissing the SVP petition is an appealable order.[2] We agree that the People's right to appeal or to seek extraordinary relief in criminal proceedings is limited. (See *People* v. *Superior Court (Myers)* (1996) 50 Cal.App.4th 826, 833-834 [58 Cal.Rptr.2d 32].)

However, the California Supreme Court has held that the People may seek writ review of an alleged error when "a trial court has acted in excess of its jurisdiction and the need for such review outweighs the risk of harassment of the accused." (*People* v. *Superior Court (Stanley)* (1979) 24 Cal.3d 622, 626 [156 Cal.Rptr. 626, 596 P.2d 691].) ■ And, in civil proceedings, there is an exception to the general rule that a judgment that is immediately appealable is not subject to review by mandate or other extraordinary writ: "Mandate is available to review an appealable judgment only when the remedy by appeal would be inadequate or the issues presented are of great public importance and must be resolved promptly." (*Powers* v. *City of Richmond* (1995) 10 Cal.4th 85, 113 [40 Cal.Rptr.2d 839, 893 P.2d 1160]; see also *Anderson* v. *Superior Court* (1989) 213 Cal.App.3d 1321, 1328 [262 Cal.Rptr. 405] [mandate available although order appealable to resolve issue of first impression and set guidelines for bench and bar]; *People* v. *Superior Court (Whitley)* (1999) 68 Cal.App.4th 1383, 1391-1392 [81 Cal.Rptr.2d 189] [petition for writ of mandate granted after erroneous dismissal of People's SVP Act petition].)

■ In the present case, we find that the circumstances justify writ relief in this civil commitment proceeding. As we discuss below, the trial court acted in excess of its jurisdiction in ruling that hearsay victim statements contained in probation reports are not admissible at a SVP Act probable cause hearing. This issue is one of first impression, and prompt resolution is necessary because the question of the admissibility of victim hearsay statements is one which is certain to arise in nearly every proceeding under the SVP Act.

---

[2]In this opinion, we do not address the issue of whether the People have the right to appeal an order dismissing the People's SVP Act petition.

## B. *The Pertinent Provisions of the SVP Act*

The California SVP Act permits the state to commit a criminal defendant to the custody of the State Department of Mental Health for two years of treatment, rather than release him upon the completion of his prison sentence, if the state can prove the defendant qualifies as a sexually violent predator. (§ 6600 et seq.) When the SVP Act was enacted in October 1995, the Legislature stated its intent as follows: "The Legislature finds and declares that a small but extremely dangerous group of sexually violent predators that have diagnosable mental disorders can be identified while they are incarcerated. These persons are not safe to be at large and if released represent a danger to the health and safety of others in that they are likely to engage in acts of sexual violence. The Legislature further finds and declares that it is in the interest of society to identify these individuals prior to the expiration of their terms of imprisonment. It is the intent of the Legislature that once identified, these individuals, if found to be likely to commit acts of sexually violent criminal behavior beyond a reasonable doubt, be confined and treated until such time that it can be determined that they no longer present a threat to society." (Stats. 1995, chs. 762, § 1, & 763, § 1; see also *People* v. *Butler* (1998) 68 Cal.App.4th 421, 424-425 [80 Cal.Rptr.2d 357]; *People* v. *Superior Court (Whitley)*, *supra*, 68 Cal.App.4th. at p. 1389.)

In *Hubbart* v. *Superior Court*, our high court concluded that the SVP Act, on its face, does not violate a defendant's constitutional rights to due process and equal protection, nor does it conflict with ex post facto principles. (*Hubbart* v. *Superior Court* (1999) 19 Cal.4th 1138, 1150-1151, 1179 [81 Cal.Rptr.2d 492, 969 P.2d 584].) In so ruling, the court relied on the United States Supreme Court's decision in *Kansas* v. *Hendricks* (1997) 521 U.S. 346 [117 S.Ct. 2072, 138 L.Ed.2d 501]). In *Hendricks*, the court determined that a similar Kansas statute, the Kansas Sexually Violent Predator Act, Kansas Statutes Annotated section 59-29a01 (1994), comported with the defendant's right to due process, and also with double jeopardy and ex post facto principles. (*Hendricks*, *supra*, 521 U.S. at p. 371 [117 S.Ct. at pp. 2086-2087].) The Supreme Court stated, "The State may take measures to restrict the freedom of the dangerously mentally ill. This is a legitimate nonpunitive governmental objective and has been historically so regarded." (*Id.* at p. 363 [117 S.Ct. at p. 2083].) Accordingly, the California SVP Act "does not establish criminal proceedings but rather enacts civil involuntary confinement proceedings . . . ." (*In re Parker*, *supra*, 60 Cal.App.4th 1453, 1461; see also *Hubbart*, *supra*, 19 Cal.4th at p. 1166.)

However, it is recognized that the SVP Act affects a substantial private liberty interest, because the Act allows detention of a defendant who has

served his underlying prison term and is scheduled to be released on parole. (*In re Parker, supra,* 60 Cal.App.4th at p. 1463.) Accordingly, a criminal defendant cannot be committed under the SVP Act absent the state's compliance with the Act's procedural requirements and proof beyond a reasonable doubt that the defendant is, due to a diagnosed mental disorder, a danger to the health and safety of others because he is likely to engage in acts of sexual violence upon his release. (§ 6602; *Hubbart* v. *Superior Court, supra,* 19 Cal.4th at pp. 1146-1147.)

The procedure which must be followed before a defendant can be committed is set forth in the SVP Act. First, the defendant is screened by the Department of Corrections and the Board of Prison Terms, based upon whether he has committed a sexually violent offense and upon a review of his social, criminal and institutional history. (§ 6601, subd. (b).) If it is determined that the defendant is likely to be an SVP, the Department of Corrections refers him to the State Department of Mental Health for an evaluation. (*Ibid.*)

Next, the Department of Mental Health must have the defendant evaluated by two practicing psychiatrists or psychologists using established protocol. (§ 6601, subd. (d).) If both evaluators determine that the defendant qualifies as an SVP under the Act, the Department of Mental Health must request the district attorney or county counsel to file a petition for commitment. (§ 6601, subd. (h).)

After the county files the petition, a superior court judge must review the petition and determine whether there is probable cause to believe that the defendant is "likely to engage in sexually violent predatory criminal behavior upon his or her release." (§ 6602.) At the probable cause hearing, the defendant is entitled to representation by counsel, and has the opportunity to be heard and to challenge the People's evidence. (§ 6602; *In re Parker, supra,* 60 Cal.App.4th at pp. 1466-1469.)

If the court determines that there is no probable cause, the People's petition is dismissed and the defendant is, where applicable, ordered to report to parole. (§ 6602.) Otherwise, if probable cause is found, the court must order the defendant to be held in custody in a secure facility until a court or jury trial is completed on the issue of whether the defendant qualifies as a sexually violent predator within the meaning of the SVP Act. (§§ 6602, 6604.)

## C. *The People's Burden Under the SVP Act*

At the probable cause hearing, the People's burden is to show that ". . . there is probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release." (§ 6602; see also *Hubbart* v. *Superior Court, supra,* 19 Cal.4th at p. 1146; *People* v. *Butler, supra,* 68 Cal.App.4th at p. 432.) If the superior court finds probable cause, the People have the burden at trial of proving beyond a reasonable doubt that the defendant is a sexually violent predator. (§§ 6602, 6604.)

"Sexually violent predator" is defined in section 6600, subdivision (a) as follows: "[A] person who has been convicted of a sexually violent offense against two or more victims for which he or she received a determinate sentence and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." In other words, the definition of "sexually violent predator" has four elements: (1) conviction of a sexually violent offense; (2) two or more victims; (3) imposition of a determinate sentence; and (4) a diagnosed mental disorder *indicating that repeat offenses are likely.*

The SVP Act also defines "sexually violent offense": "[T]he following acts when committed by force, violence, duress, menace, or fear of imme-diate and unlawful bodily injury on the victim or another person, and that are committed on, before, or after the effective date of this article and result in a conviction or a finding of not guilty by reason of insanity, as provided in subdivision (a): a felony violation of paragraph (2) of subdivision (a) of Section 261, paragraph (1) of subdivision (a) of Section 262, Section 264.1, subdivision (a) or (b) of Section 288, or subdivision (a) of Section 289 of the Penal Code, or sodomy or oral copulation in violation of Section 286 or 288a of the Penal Code." (§ 6600, subd. (b).)

However, if the victim is a child under the age of 14, the SVP Act provides that the People may, alternatively, establish that the defendant committed a sexually violent offense by showing that *the underlying offense is one that is specified in section 6600, subdivision (b),* and "the offending act or acts involved substantial sexual conduct . . . ." (§ 6600.1, subd. (a).) " 'Substantial sexual conduct' means penetration of the vagina or rectum of either the victim or the offender by the penis of the other or by any foreign object, oral copulation, or masturbation of either the victim or the offender." (§ 6600.1, subd. (b).)

Additionally, the SVP Act defines "predatory" at section 6600, subdivision (e), as follows: " 'Predatory' means an act is directed toward a stranger, a person of casual acquaintance with whom no substantial relationship exists, or an individual with whom a relationship has been established or promoted for the primary purpose of victimization."

From our review of the plain language of the pertinent provisions of the SVP Act, we find that commitment under the Act has two essential requirements: first, two or more convictions which qualify as sexually violent offenses; and, second, a diagnosable mental disorder which renders the defendant dangerous to others at the time of commitment. (See *Hubbart* v. *Superior Court, supra*, 19 Cal.4th at pp. 1144-1145.) In the present matter, we are concerned with the nature of the evidence upon which the People may rely to establish at the probable cause hearing that the defendant's convictions qualify as sexually violent offenses.

D. *Evidence Which Is Admissible to Show That Defendant Has Committed Sexually Violent Offenses*

Having set forth the meaning of the term "sexually violent predator" as including both the commission of sexually violent offenses and the diagnosis of a certain type of mental disorder, the SVP Act also specifies the evidence which upon which the People may rely. In section 6600, subdivision (a), the Act provides that, "Conviction of one or more of the crimes enumerated in this section shall constitute evidence that may support a court or jury determination that a person is a sexually violent predator, but shall not be the sole basis for the determination. The existence of any prior convictions may be shown with documentary evidence. The details underlying the commission of an offense that led to a prior conviction, including a predatory relationship with victim, may be shown by documentary evidence, including, but not limited to, preliminary hearing transcripts, trial transcripts, probation and sentencing reports, and evaluations by the State Department of Mental Health."

■ Concerns about protecting the defendant's due process rights have arisen with respect to the evidentiary showing required in SVP proceedings. In *Parker*, the Fourth Appellate District agreed with the state's position that section 6600, subdivision (a) specifically provides that the existence of qualifying past conduct, i.e., sexually violent offenses, may be shown at the probable cause hearing by documentary evidence. (60 Cal.App.4th at p. 1466.) The appellate court also agreed that the inclusion of hearsay in the

documentary evidence did not render the evidence inadmissible. (60 Cal.App.4th at p. 1468.)[3]

However, the court in *Parker* disagreed that the probable cause hearing could be based solely upon paper review, instead holding that due process requires that the person subject to an SVP petition be given the opportunity to be heard, to cross-examine the state's expert witnesses, and to call his own witnesses. (*In re Parker, supra*, 60 Cal.App.4th at pp. 1466, 1469-1470; accord, *People* v. *Butler, supra*, 68 Cal.App.4th at p. 434.)

E. *Hearsay Victim Statements Contained in Probation Reports Are Admissible in SVP Proceedings*

 In the case at bar, the trial court ruled that due process under the SVP Act requires admissible evidence of qualifying prior convictions, and that the evidence which the People can introduce for that purpose is limited to the same evidence which is allowed to prove prior convictions for purposes of sentence enhancement; in other words, the People's proof is limited to the evidence contained within the record of a defendant's prior convictions, and may not, therefore, include hearsay victim statements from probation reports. At the time the trial court made its rulings, it did not have the benefit of the recent decisions that have issued in the rapidly evolving area of SVP law, such as the *Hubbart* decision.

Howard contends that the trial court's ruling is correct, because the language of the SVP Act does not expressly mandate admission of a probation report's victim hearsay statements. Instead, Howard asserts, the Act distinguishes between the evidence which may be used to prove a prior conviction, and the evidence which may be used to show the details of an offense. Howard argues that the only permissible use of victim hearsay statements regarding the details of an offense is use by the psychological experts in formulating their opinions.

We are not persuaded by Howard's arguments, and instead agree with the People that victim hearsay statements contained in probation reports are admissible at the probable cause hearing. The trial court reasoned that the due process requirements for proof of prior convictions for purposes of

---

[3]With regard to the People's evidentiary showing, the high court in *Hubbart* stated that "[T]he Legislature could reasonably conclude that the evidentiary methods contemplated by the Act are sufficiently reliable and accurate to accomplish its narrow and important purpose . . . ." (*Hubbart* v. *Superior Court, supra*, 19 Cal.4th at p. 1164.)

sentence enhancement, as set forth in *People* v. *Reed, supra,* 13 Cal.4th 217, have equal application in the context of the SVP Act. However, we find that the rulings in *People* v. *Reed* have no application in the present matter.

 In *Reed,* the California Supreme Court held that excerpts from a probation officer's report were inadmissible hearsay which could not be used to prove that defendant's prior conviction was a serious felony involving use of a dangerous or deadly weapon. (*People* v. *Reed, supra,* 13 Cal.4th at pp. 230-231.) The court noted that it had previously ruled that the People may prove prior convictions only by evidence obtained from the record of the prior conviction, and may not utilize live witnesses or inadmissible evidence. (*Id.* at pp. 226, 230-231.) This rule effectively " 'bars the prosecution from relitigating the circumstances of a crime committed years ago and thereby threatening the defendant with harm akin to double jeopardy and denial of a speedy trial.' " (*People* v. *Woodell* (1998) 17 Cal.4th 448, 453 [71 Cal.Rptr.2d 241, 950 P.2d 85].)

 The rulings in *Reed* have no application with respect to evidentiary due process issues arising under the SVP Act. Sentence enhancement proceedings based upon proof of prior convictions are not analogous to proceedings for commitment under the Act. Sentence enhancement is a criminal proceeding, while it is well established that the proceedings under SVP Act are civil. (See *In re Parker, supra,* 60 Cal.App.4th at p. 1461.) With respect to the similar Kansas SVP statute, the United States Supreme Court stated, "[U]nlike a criminal statute, no finding of scienter is required to commit an individual who is found to be a sexually violent predator; instead, the commitment determination is made based on a 'mental abnormality' or 'personality disorder' rather than on one's criminal intent." (*Kansas* v. *Hendricks, supra,* 521 U.S. at p. 362 [117 S.Ct. at p. 2082].)

Like the Kansas SVP statute, the California SVP Act focuses upon determining whether the defendant has a " 'diagnosed mental disorder' from which a prediction of future dangerous behavior can be made . . . ." (*In re Parker, supra,* 60 Cal.App.4th at p. 1467.) The purpose of the SVP Act is protection of the public safety, not punishment of the defendant. (See *People* v. *Butler, supra,* 68 Cal.App.4th at p. 425 [quoting Stats. 1995, chs. 762, § 1, & 763, § 1: " 'The Legislature further finds and declares that while these individuals have been duly punished for their criminal acts, they are, if adjudicated sexually violent predators, a continuing threat to society. . . .' "].)

 Under the SVP Act, the determination of whether the defendant is a sexually violent predator who poses a threat to society must include evidence of qualifying prior convictions. (*In re Parker, supra,* 60 Cal.App.4th at

p. 1467.) However, the qualifying prior convictions are not "proved" in order to enhance the defendant's sentence; instead, the evidence of prior convictions is required as *partial* proof that the defendant has committed sexually violent offenses. (§ 6600, subds. (a), (b).) The SVP Act provides that *additional* evidence, *obtained from sources outside the conviction record*, is admissible to prove sexually violent offenses, because the Act expressly states that "[t]he details underlying the commission of an offense that led to a prior conviction, including a predatory relationship with the victim, may be shown by documentary evidence, including, but not limited to, preliminary hearing transcripts, trial transcripts, *probation and sentencing reports*, and evaluations by the State Department of Mental Health." (§ 6600, subd. (a), italics added.) Probation reports in felony cases necessarily include victim hearsay statements, pursuant to the requirements for probation reports set forth in California Rules of Court, rule 411.5(a)(5).

The same reasoning which led the appellate courts in *Parker* and *Hatfield* to conclude that hearsay evidence contained in the psychological evaluations is admissible in SVP proceedings without violating the defendant's constitutional due process rights, is also applicable to hearsay victim statements contained in probation reports. The defendant has the same opportunity to challenge the hearsay evidence, whether it is contained in a psychological evaluation or in a probation report, and to cross-examine the People's witnesses, as well as to present his own rebuttal evidence. (*In re Parker*, *supra*, 60 Cal.App.4th at p. 1468 .)

██ Moreover, due process under the SVP Act is not measured by the rights accorded a defendant in criminal proceedings, but by the standard applicable to civil proceedings: The extent of due process protection which must be accorded a civil litigant is tested by consideration of four factors: (1) " ' "the private interest [which] will be affected by the official action" ' "; (2) " ' "the risk of an erroneous deprivation . . . through the procedures used" ' "; (3) " ' "the probable value, if any, of additional or substitute procedural safeguards," ' " and (4) " 'the . . . interest in informing individuals . . . of the action and in [allowing] them to present their side of the story.' " (*In re Parker*, *supra*, 60 Cal.App.4th at pp. 1462-1463, quoting *Conservatorship of Moore* (1986) 185 Cal.App.3d 718, 728-729 [229 Cal.Rptr. 875].)

██ Upon consideration of these four factors, due process is preserved under the SVP Act because the proceedings mandated by the Act are adequate to enable a defendant to challenge the People's documentary evidence. By doing so, the defendant has the opportunity to thoroughly present his side of the story. Moreover, hearsay statements are obviously

vulnerable to challenge by defendant as arguably unreliable summaries of victim and witness interviews, and the defendant may rebut the hearsay statements by providing his own version of the details underlying his offenses.

We also consider that, while the alleged sexually violent predator has a strong liberty interest, the government also has a strong interest in protecting the ·public from persons who are dangerous to others. (See *Hubbart* v. *Superior Court, supra*, 19 Cal.4th at p. 1151.) If the defendant's sexually violent offenses can be established only by looking to the record of prior convictions, this additional procedural burden will severely limit the People's ability to protect the public by obtaining commitments under the SVP Act.

This undesirable result would ensue if the People were restricted to the evidence contained in the defendant's prior conviction record. With such a limited source of evidence, the People would be able to obtain civil commitment of sexually violent predators only in cases where the conviction record was extensive, and included victim testimony at the preliminary hearing or trial as to the details of the sexually violent offense, and as to the victim's relationship with the defendant. If, as here, the defendant pled guilty before the preliminary hearing, or the victims' testimony was not sufficient to establish the details of the offense as required by the SVP Act, the state would never be able to meet its burden. As in the present case, the relevant details of the defendant's sex offenses often may be found only in the hearsay statements of victims and other witnesses contained in probation and sentencing reports. Accordingly, we conclude that exclusion of such hearsay statements from the evidence presented by the People at the probable cause hearing would place a burden on the prosecution which is not required by the plain language of the SVP Act.

Having concluded that hearsay victim statements contained in probation reports are admissible at the SVP Act section 6602 probable cause hearing to show the details underlying a prior conviction, and that the trial court erred in ruling otherwise, we grant the People extraordinary relief from the trial court's order dismissing their petition to commit Howard as a sexually violent offender.

IV. Disposition

Let a peremptory writ of mandate issue which vacates respondent court's order after probable cause hearing, filed May 7, 1998, and directs respondent

court to enter a new and different order holding real party in interest Jerry Howard in a secure facility pending further proceedings in accordance with the views expressed in this opinion. Our temporary stay order shall remain in effect until this decision is final.

Bamattre-Manoukian, J., and Mihara, J., concurred.

On March 23, 1999, the opinion was modified to read as printed above. The petition of real party in interest for review by the Supreme Court was denied June 3, 1999.