[No. B143800. Second Dist., Div. Six. July 25, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN HOWARD HARDACRE, Defendant and Appellant.

**COUNSEL**

Jean F. Matulis, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Marc E. Turchin, Acting Assistant Attorney General, Marc Nolan and Sharlene A. Honnaka, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**COFFEE, J.**—John Howard Hardacre was found to be a sexually violent predator (SVP) under Welfare and Institutions Code section 6600 et seq.[1] and was committed to the state Department of Mental Health (DMH) for two years. He appeals from an order issued after the annual "show cause" hearing on his mental condition, at which the court denied his request for a full hearing on his SVP status and ordered him to remain committed for the balance of his two-year term. (§ 6605, subds. (b) & (c).)

Hardacre contends he was deprived of due process because the court denied his request for a court-appointed mental health expert to assist him at the show cause hearing. (§ 6605, subd. (a).) He also argues that he was entitled to a full hearing on his SVP status because there was probable cause to believe that his mental condition had changed and that he was no longer a danger to others. (§ 6605, subd. (d).) We affirm.

*Statutory Framework*

The SVP law provides for the involuntary commitment of certain sexually violent offenders for the purpose of treatment. (§§ 6600-6604.1; *People v. Hedge* (1999) 72 Cal.App.4th 1466, 1469 [86 Cal.Rptr.2d 52].) A commitment generally lasts two years, but the law contains several provisions allowing an interim review of the SVP's condition in the event it materially improves before the expiration of that period. (§§ 6604-6608; *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1147 [81 Cal.Rptr.2d 492, 969 P.2d 584].)

One safeguard afforded SVP's is an annual mental examination. (§ 6605, subd. (a).) The Director of DMH also must provide SVP's with annual notice of their right to petition for conditional release. (§§ 6605, subd. (b), 6608.) If the SVP does not affirmatively waive this right, the court must set a show cause hearing "to determine whether facts exist that warrant a hearing on whether the person's condition has so changed that he or she would not be a danger to the health and safety of others if discharged." (§ 6605, subd. (b).) If the court finds probable cause to believe that such a change has occurred, it must hold a full hearing and afford the SVP the same basic rights as at the initial commitment proceeding: a jury trial, the appointment of counsel and expert witnesses, and the right to unconditional release if the person's SVP status is not proved beyond a reasonable doubt. (§ 6605, subds. (d)-(e).)

*Proceedings Below*

Hardacre is a pedophile with a long history of molesting young boys and three felony convictions for lewd conduct with a minor under 14 years of

---

[1]All statutory references are to the Welfare and Institutions Code.

age. He was declared an SVP in June of 1999 and committed to Atascadero State Hospital (ASH) for treatment. During the trial on his SVP commitment, Hardacre presented evidence that he had been participating in Bible studies and a parole recidivism program based on Christian values. He argued then that his religious beliefs would prevent him from reoffending.

In March of 2000, Hardacre was evaluated by clinical psychologist William Knowlton, Ph.D., as part of his annual review. Dr. Knowlton reviewed Hardacre's records at ASH, discussed his progress with members of his treatment team, and prepared a report recommending a continuation of the SVP commitment. According to the records reviewed by Dr. Knowlton, "Mr. Hardacre's participation in therapy has been minimal. He continues in the treatment readiness group with denial of any need for treatment because he feels that his religion will prevent any further attraction to male children. Thus, he cannot participate effectively in the realistic exploration of his past history as he shuts himself out of any such therapy." The records also revealed that Hardacre had completed only one phase of the four-phase sex offender treatment program and thus was ineligible for conditional release. Hardacre's treatment team unanimously recommended that he be retained in the SVP program.

A copy of Dr. Knowlton's report was forwarded to the superior court as part of the annual review. The matter was set for a show cause hearing after Hardacre declined to waive his right to seek conditional release, and the court appointed counsel to represent Hardacre at the hearing.

Counsel requested that the court appoint a mental health professional to examine Hardacre, who is indigent. The trial court denied the request. It reasoned that under section 6605, Hardacre was not entitled to his own court-appointed expert as a matter of right unless he prevailed at the show cause hearing and demonstrated probable cause to believe his condition had changed. Observing that it had the discretion to appoint an expert before probable cause had been established, the court declined to do so.

Dr. Knowlton was the only witness at the show cause hearing. He testified that in his opinion, Hardacre remained a danger because he refused to participate in the second stage of his therapy, which focuses on a person's past offenses, fantasies and the factors likely to trigger a new offense. Hardacre maintained that he did not need the therapy because he had "found Christ" and was no longer at risk for committing sexual offenses. He did not admit his previous mistakes and did not acknowledge that his criminal conduct had harmed his victims. Dr. Knowlton observed that Hardacre had previously reoffended while involved in religious activities, and he did not

believe there had been any significant change in Hardacre's condition. Based on this testimony and the annual report, the court concluded there was no probable cause to believe Hardacre's mental condition had changed and continued his status as an SVP.

### Appointment of Expert Witness

■ Hardacre contends he was entitled to the appointment of his own expert to assist him in preparing for the show cause hearing. We conclude that under section 6605, the appointment of an expert at that stage of the proceedings was a matter within the trial court's discretion.

Section 6605, subdivision (a), provides that at the time of the annual examination, the SVP "*may* retain, or if he or she is indigent and so requests, the court *may* appoint a qualified expert or professional person to examine him or her, and the expert or professional person shall have access to all records concerning the [SVP]." (Italics added.) By contrast, when the court schedules a full hearing on the SVP's status after finding probable cause to believe he is no longer a danger to others, "[t]he court *shall* appoint an expert if the person is indigent and requests an appointment." (§ 6605, subd. (d), italics added.)

Absent any indicia of a contrary legislative intent, the word "shall" is ordinarily construed as mandatory, whereas "may" is ordinarily construed as permissive. (*People v. Ledesma* (1997) 16 Cal.4th 90, 95 [65 Cal.Rptr.2d 610, 939 P.2d 1310].) This is especially so when both "shall" and "may" are used in the same statute. (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 443 [261 Cal.Rptr. 574, 777 P.2d 610].) ■ "[I]t is well settled 'that in attempting to ascertain the legislative intention effect should be given, whenever possible, to the statute as a whole and to every word and clause thereof, leaving no part of the provision useless or deprived of meaning.'" (*California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 18 [270 Cal.Rptr. 796, 793 P.2d 2].) When the Legislature uses different words in the same statute, we must presume it intended a different meaning. (*Campbell v. Zolin* (1995) 33 Cal.App.4th 489, 497 [39 Cal.Rptr.2d 348].)

■ Under section 6605, the court "may" appoint an expert at the time of the SVP's annual examination, but "shall" appoint an expert in cases where probable cause is demonstrated and a full hearing is held on his SVP status. (§ 6605, subds. (a) & (d).) This difference in language reveals a difference in meaning: though a court has the discretion to appoint an expert to assist the SVP at an earlier point in the annual review proceedings, it is

not required to do so unless and until the matter is set for a full hearing under section 6605, subdivision (d).

The Supreme Court's recent decision in *People v. Cheek* (2001) 25 Cal.4th 894 [108 Cal.Rptr.2d 181, 24 P.3d 1204] does not require a different interpretation of the statute. In *Cheek*, the court held that the annual show cause hearing requires more than a facial review of the mental health reports and documentary evidence. An SVP is thus entitled to cross-examine the authors of adverse reports and call his own witnesses, including expert witnesses with whom he has consulted. *Cheek* does not address the separate issue of whether an SVP is entitled to a court-appointed expert before the show cause hearing as a matter of right. In this case, the show cause hearing met the procedural requirements of *Cheek* because Hardacre was given the opportunity to present evidence and cross-examine the psychologist who prepared the report for his annual review.

We also conclude that the court did not abuse its discretion when it denied Hardacre's request for appointment of an expert. The report by Dr. Knowlton made it clear that Hardacre had made little progress in the treatment program at ASH, choosing to rely upon his religious values alone as a deterrent to future criminal conduct. Hardacre did not dispute the accuracy of the information contained in the report, although he disagreed with its recommendation that he be retained for treatment. Lacking any information that Hardacre's mental condition had changed, the trial court reasonably concluded that an opinion by a second mental health professional would be of little value. Hardacre has not established that the court's ruling was " 'irrational or arbitrary' " or that it fell " ' "outside the bounds of reason." ' " (See *People v. Andrade* (2000) 79 Cal.App.4th 651, 659 [94 Cal.Rptr.2d 314].)

### Due Process

Hardacre claims that by requiring him to proceed with the show cause hearing without an expert, the court violated his right to due process under the state and federal Constitutions. (Cal. Const., art. I, § 7; U.S. Const., 14th Amend.) We disagree.

Due process is a flexible concept that calls for " 'such procedural protections as the particular situation demands.' " (*People v. Scott* (1998) 64 Cal.App.4th 550, 561 [75 Cal.Rptr.2d 315].) To determine what process is due, we consider four factors: (1) the private interest to be affected by official action; (2) the effect of the contemplated procedure upon governmental interests; (3) the risk of an erroneous deprivation of liberty through

the procedure used, and the probable value of additional or substitute safeguards; and (4) the "dignitary interest" of an individual to present his side of the story before a responsible government official. (*Ake v. Oklahoma* (1985) 470 U.S. 68, 76-77 [105 S.Ct. 1087,1093, 84 L.Ed.2d 53]; *People v. Otto* (2001) 26 Cal.4th 200, 209 [109 Cal.Rptr.2d 327, 334]; *People v. Superior Court* (*Howard*) (1999) 70 Cal.App.4th 136, 154 [82 Cal.Rptr.2d 481]; *In re Parker* (1998) 60 Cal.App.4th 1453, 1462-1463 [71 Cal.Rptr.2d 167].)

██ As to the first factor, it cannot be disputed that an SVP commitment affects a fundamental liberty interest. (*People v. Superior Court* (*Howard*), *supra*, 70 Cal.App.4th at p. 155.) But that interest is accorded less significance at the annual show cause hearing, which takes place after the SVP has been adjudicated a danger to others and has been committed for two years of involuntary treatment. (See *People v. Majors* (1998) 18 Cal.4th 385, 411 [75 Cal.Rptr.2d 684, 956 P.2d 1137] [noting that criminal defendant's fundamental liberty interest is "substantially diminished" by guilty verdict].) Though the Legislature has provided for a hearing to evaluate the SVP's mental state one year into the two-year commitment, the SVP does not stand in the same shoes as he did at the time of the initial commitment proceeding.

As to the second factor, the state has a legitimate interest in conserving its financial resources. While fiscal concerns alone do not weigh as heavily as a person's liberty interest (*Ake v. Oklahoma*, *supra*, 470 U.S. at pp. 78-79 [105 S.Ct. at p. 1094]), neither the state nor the federal Constitution requires the appointment of an expert at a stage of the proceedings when the expert's contribution is likely to be insubstantial.

This brings us to the third factor, which requires us to consider the risk of an erroneous ruling if an expert is not appointed before the show cause hearing. That risk appears small. To obtain a full hearing on his SVP status at the time of his annual review, Hardacre needed only to establish "probable cause" that his mental condition had changed and he was no longer a danger to others. (§ 6605, subds. (c) & (d).) ██ Probable cause has a lower threshold of proof than proof beyond a reasonable doubt or by a preponderance of the evidence, and has been defined as " 'a state of facts as would lead a [person] of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion' " of the fact to be proved. (See *People v. Slaughter* (1984) 35 Cal.3d 629, 636 [200 Cal.Rptr. 448, 677 P.2d 854].) ██ If an SVP cannot make the required showing based on the annual evaluation by DMH, it is unlikely that the appointment of an expert will alter the outcome.

Turning finally to the fourth factor in the due process analysis, the lack of an expert at the show cause hearing did not deprive Hardacre of his ability to

petition the court for a full hearing on his SVP status. Hardacre was represented by appointed counsel and personally appeared at the show cause hearing. He could have testified on his own behalf, although he elected not to do so. Counsel cross-examined the DMH psychologist who prepared the annual report in an attempt to demonstrate that his client was no longer a danger. The trouble was, there was no evidence to suggest any change in Hardacre's condition.

Hardacre complains that by not appointing an expert to assist him, the court gave DMH too much control over the probable cause determination. ■ If an SVP articulates some reason to believe that information in the annual report by DMH is inaccurate or unreliable, the court may exercise its discretion under section 6605, subdivision (a), and appoint an expert to assist the SVP at the show cause hearing. But this does not mean that an expert is constitutionally required in all cases.

■ We are not persuaded by Hardacre's reliance on *Conservatorship of Scharles* (1991) 233 Cal.App.3d 1334 [285 Cal.Rptr. 325], which involved a conservatee's request for an independent medical examination. There the trial court had denied the request because the conservatee, although indigent, was represented by private counsel rather than the public defender. (*Id.* at p. 1337.) On appeal, this ruling was deemed an abuse of discretion because the funds would have been available if the conservatee had been represented by a public agency; in essence, she was being penalized for locating a private attorney who would handle her case pro bono. (*Id.* at pp. 1340-1343.) The case does not stand for the broad proposition that due process requires the appointment of an expert whenever a person seeks to challenge an involuntary civil commitment.

In conclusion, the SVP law contains numerous safeguards to protect a patient who, during his two-year commitment, improves to the point where release is warranted. (See §§ 6605, subd. (f), 6607, 6608.) When there is probable cause at the annual show cause hearing to believe that such a change has occurred, a full hearing will be held and the SVP will be entitled to the appointment of an expert upon request. (§ 6605, subds. (c) & (d).) Due process does not require the appointment of an expert as a matter of right before probable cause has been established.

*Denial of Petition for Full Hearing*

■ Hardacre contends the court should have ordered a full hearing on his SVP status under section 6605, subdivision (d), because he established probable cause that he was no longer a danger to others. As a threshold matter, we must determine the appropriate standard of review.

The SVP at a show cause hearing has an evidentiary burden similar to the prosecution's burden at the preliminary hearing in a felony case: both must establish probable cause to believe in the existence of the requisite facts. At the preliminary hearing, the prosecutor must establish probable cause that an offense has been committed and the accused is guilty of it. (See *People v. Slaughter, supra*, 35 Cal.3d at p. 637.) At the show cause hearing, the SVP must establish probable cause to believe that his mental condition has changed so that he is no longer a danger to others. (§ 6605, subd. (c).)

When the magistrate in a criminal case dismisses the charges at the preliminary hearing, the appellate court independently reviews that order to determine whether "the evidentiary record discloses a rational basis for believing the defendant guilty of the charged crime." (*People v. Slaughter, supra*, 35 Cal.3d at p. 642.) If the magistrate makes findings of fact in the process of determining whether probable cause exists, those findings are conclusive if supported by substantial evidence. (*Id.* at pp. 637-638.) We conclude the same standard of review should apply to probable cause determinations in SVP cases. (See *People v. Mercer* (1999) 70 Cal.App.4th 463, 465-466 [82 Cal.Rptr.2d 723] [standard of review for sufficiency of evidence on SVP finding same as in criminal cases].) The question, then, is whether the evidentiary record of the show cause hearing disclosed a rational basis for believing that Hardacre was no longer a danger to others, accepting any factual findings made by the trial court to the extent they were supported by substantial evidence.

There being no disputed issues of fact, we have independently reviewed the record for probable cause and determined that Hardacre did not carry his burden. It was uncontested that Hardacre would not participate in the second phase of his therapy, and nothing in the annual evaluation suggests that he was in a better position to control his pedophilia than he was when he was first committed. The court did not err when it declined to set the matter for a full hearing under section 6605, subdivision (d).

The judgment is affirmed.

Gilbert, P. J., and Perren, J., concurred.

A petition for a rehearing was denied August 20, 2001, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied October 24, 2001. Brown, J., was of the opinion that the petition should be granted.