Filed 9/30/21

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C089002 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F07593) |
| v. | |
| JERED PILLSBURY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Geoffrey A. Goodman, Judge. Reversed with directions.

Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez, Chung Mi Choi, Deputy Attorney General, for Plaintiff and Respondent.

1

In this case, we address issues related to the 2018 amendments to Penal Code section 1170, subdivision (d)[1] and the Department of Corrections and Rehabilitation (CDCR) program related to those amendments. We conclude that, upon the recommendation of the Secretary of CDCR (the Secretary), trial courts have the authority to recall and resentence defendants based on post-judgment changes in the law giving courts discretion to strike or dismiss enhancements, even when the judgment in the case is long since final and even when the original sentence was the product of a plea agreement. We also conclude that, while trial courts have the authority to summarily decline to recall and resentence, defendants have due process rights to notice and an opportunity to be heard before the court rules, and a statement of the court's reasons for the declination. However, in cases such as this one where the prosecution has not weighed in prior to the trial court's summary declination, we conclude defendants do not have a constitutional right to counsel.

We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Commitment Offenses

According to the preliminary hearing transcript, an employee of a tire store was closing the store when defendant entered. Defendant was wearing a hooded sweatshirt with the hood pulled over his head and his face covered either with a shirt or a mask. Only his eyes were exposed. Defendant approached the employee and started grabbing cash out of the cash drawer. The employee noticed that defendant had a handgun that he believed to be a Glock nine-millimeter. Defendant ordered the employee to the ground. The employee recognized defendant's distinct voice and his eyes and eyebrows; defendant had been a former employee and had worked with the employee at the tire

---

[1] Further undesignated statutory references are to the Penal Code. As a shorthand, we shall refer to section 1170, subdivisions (d) and (d)(1) as section 1170(d) and 1170(d)(1).

2

shop for approximately three years. Additionally, the employee knew defendant had a Glock nine-millimeter handgun. After the employee got on the ground, defendant changed his mind and ordered the employee to go to the back of the store. Defendant took the employee to a back room, ordered him to the floor, and took his cell phone. Defendant then went into an adjacent room in which there was a safe. After the employee heard defendant go to the safe, he heard him return to the cash register and then leave. Defendant took $629 in cash from the store.

Defendant was charged with robbery in the second degree (§§ 211, 212.5) and a firearm enhancement under section 12022.53, subdivision (b).

In a separate case, defendant was charged with two counts of second degree commercial burglary of a veterinary hospital. (§ 459.) In each instance, defendant entered by breaking a window and stole property and cash, totaling approximately $8,000.

On November 8, 2013, pursuant to a negotiated agreement, defendant entered a plea of no contest to one count of robbery in the second degree (§§ 211, 212.5) and admitted that, in the course of the robbery, he personally used a firearm (§ 12022.53, subd. (b)). He also pleaded no contest to one count of commercial burglary (§ 459) and the remaining count was dismissed.

Consistent with the negotiated agreement, the trial court sentenced defendant to an aggregate term of 13 years, calculated as follows: the midterm of three years for robbery in the second degree, plus a 10-year term for the section 12022.53, subdivision (b) firearm enhancement. He was sentenced to a two-year concurrent term on the commercial burglary count.

### The Secretary's Section 1170(d)(1) Letter

In a letter to the trial court dated November 29, 2018, the Secretary recommended the recall of defendant's sentence and resentencing pursuant to section 1170(d). The Secretary urged the court to consider the amendment to section 12022.53, subdivision

3

(h), which authorized courts to strike or dismiss firearm enhancements in the interest of justice pursuant to section 1385.[2] The Secretary stated that, while prior to the amendment courts were required to impose firearm enhancements, following its enactment, courts are empowered to exercise their discretion to strike or dismiss such enhancements in the interest of justice at resentencing pursuant to section 1170(d). The Secretary concluded the letter stating: "Having reviewed the enclosed documentation it appears that [defendant's] sentence warrants the attention of the court. Pursuant to . . . Section 1170, subdivision (d), as the Secretary, I recommend the inmate's sentence be recalled and that he be resentenced." (Fns. omitted.)

The "enclosed documentation" referenced in the Secretary's letter was a cumulative case summary prepared after a diagnostic study and evaluation of defendant. The summary stated that defendant had not committed any serious rules violations and had no pending disciplinary actions. Urine samples taken were negative for controlled substances. His programming included vocational computer literacy, service dog training, victim impact awareness programs, adult basic education, and voluntary GED. He completed the Substance Abuse Program / Inmate Community Services program. He served as a kitchen cook and recreational monitor. The summary included laudatory reports regarding his participation in this programming. It also noted he had 17 family visits from family who resided out of county.

Without notice to defendant or an opportunity to provide additional information, the trial court declined to recall and resentence him. In its written ruling, it stated it had reviewed the letter and defendant's file and "decline[d] to recall the sentence and resentence defendant pursuant to the newly amended . . . [section] 1170(d)(1)." No explanation for the declination was given.

---

[2]  Senate Bill No. 620 (2017-2018 Reg. Sess.), effective January 1, 2018, amended section 12022.53, subdivision (h). (Stats. 2017, ch. 682, § 2.)

4

# DISCUSSION

## I. The Trial Court's Authority to Recall & Resentence Based on a Change in the Law

### A. Principles of Statutory Interpretation

" ' "Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. [Citation.] We must look to the statute's words and give them their usual and ordinary meaning. [Citation.] The statute's plain meaning controls the court's interpretation unless its words are ambiguous." [Citations.] If the words in the statute do not, by themselves, provide a reliable indicator of legislative intent, "[s]tatutory ambiguities often may be resolved by examining the context in which the language appears and adopting the construction which best serves to harmonize the statute internally and with related statutes. [Citation.]" [Citation.] " 'Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute . . . ; and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation].' [Citations.]" [Citation.] If the statute is ambiguous, we may consider a variety of extrinsic aids, including legislative history, the statute's purpose, and public policy.' " (*People v. Lucero* (2019) 41 Cal.App.5th 370, 394-395, quoting *People v. Arias* (2008) 45 Cal.4th 169, 177.)

### B. Jurisdiction, Section 1170(d)(1), and Recall and Resentencing Based on a Change in the Law

"Under the general common law rule, a trial court is deprived of jurisdiction to resentence a criminal defendant once execution of the sentence has commenced." (*People v. Federico* (2020) 50 Cal.App.5th 318, 326, review granted August 26, 2020, S263082 (*Federico*).) However, section 1170(d)(1) is an exception to this rule. In pertinent part, it authorizes the Secretary to recommend recall and resentencing "at any time" and gives the trial court jurisdiction to do so.

5

We asked the parties to provide supplemental briefing concerning whether the trial court had the authority to recall and resentence defendant based on a change in the law given that section 1170(d)(1) does not expressly authorize as much and, normally, a defendant is not entitled to an ameliorative benefit of a change in the law after judgment is final. The request asked the parties to address *Federico, supra,* 50 Cal.App.5th 318, which suggested courts have no such authority. (*Id*. at p. 327.) As we shall explain, we disagree with *Federico* on this point and conclude the Legislature conferred authority upon trial courts under section 1170(d)(1) to resentence defendants whose cases are final based on an ameliorative change in the law.

Section 1170(d)(1) in effect at the time of the Secretary's letter in the instant case provided: "When a defendant subject to this section or subdivision (b) of Section 1168 has been sentenced to be imprisoned in the state prison or a county jail pursuant to subdivision (h) and has been committed to the custody of the secretary or the county correctional administrator, the court may, within 120 days of the date of commitment on its own motion, *or at any time* upon the recommendation of the secretary or the Board of Parole Hearings in the case of state prison inmates, the county correctional administrator in the case of county jail inmates, . . . *recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if [he or she] had not previously been sentenced*, provided the new sentence, if any, is no greater than the initial sentence. The court resentencing under this subdivision shall apply the sentencing rules of the Judicial Council so as to eliminate disparity of sentences and to promote uniformity of sentencing. The court resentencing under this paragraph may reduce a defendant's term of imprisonment and *modify the judgment*, including a judgment entered after a plea agreement, if it is in the interest of justice. The court may consider postconviction factors, including, but not limited to, the inmate's disciplinary record and record of rehabilitation while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the inmate's risk for

6

future violence, and evidence that reflects that circumstances have changed since the inmate's original sentencing so that the inmate's continued incarceration is no longer in the interest of justice. Credit shall be given for time served." (Stats. 2018, ch. 36, § 18, eff. June 27, 2018, italics added.)

We conclude that once the recommendation was made by the Secretary, it was within the authority of the trial court to recall defendant's sentence and then resentence him by exercising its discretion to dismiss or strike the firearm enhancement under section 12022.53 subdivision (h) and 1385, subdivision (a), thus providing him the benefit of the change in the law. In arriving at this conclusion, we first look to the express provisions of the amended statutes. Section 1170(d)(1) authorizes the Secretary to make the recommendation "at any time." It then authorizes the court to "modify the judgment" and places no limitations on when this can be done. Thus, a plain reading of the statutory language leads to the conclusion that the court can modify the judgement "at any time," even after the judgment has become final.

Additionally, the plain language of the ameliorative change to the firearm enhancement statute provides that the authority to strike or dismiss a firearm enhancement "applies to any resentencing that may occur pursuant to any other law." (§ 12022.53, subd. (h).) A resentencing after a recall under section 1170(d)(1) is a resentencing pursuant to law.

Second, we look to the law concerning resentencing generally. In discussing what our high court has termed, "the full resentencing rule," the court in *People v. Buycks* (2018) 5 Cal.5th 857 (*Buycks*) noted that, under the recall provisions of section 1170(d), trial courts have jurisdiction to modify "*every* aspect of the defendant's sentence." (*Buycks*, at p. 893.) The *Buycks* court added: "In this situation, we have recognized that the resentencing court may consider 'any pertinent circumstances which have arisen since the prior sentence was imposed.' " (*Ibid*.) In our view, a change in the law is a "pertinent circumstance[]."

7

Based on *Federico, supra,* 50 Cal.App.5th 318, the Attorney General asserts that the trial court lacked authority to strike defendant's firearm enhancement pursuant to sections 12022.53, subdivision (h), and 1385 because "the judgment was final and the trial court did not have the authority to modify the judgment of conviction." Because the Secretary recommended modification here pursuant to section 1170(d)(1), we disagree.

In *Federico*, the Secretary sent the trial court a letter recommending resentencing under section 1170(d) because the court had committed a sentencing error and the original sentence was unauthorized. (*Federico*, *supra,* 50 Cal.App.5th at p. 321.) The defendant filed a motion agreeing that his sentence was unauthorized, and additionally requested the court to apply Proposition 57[3] and transfer jurisdiction to the juvenile court because he was 15 years old at the time of the offense. (*Ibid.*) In resentencing the defendant, the trial court declined to apply Proposition 57, in part because the defendant's judgment was long final when Proposition 57 was enacted and Proposition 57 did not address retroactivity. (*Id.* at p. 323.) Our colleagues in the Fourth Appellate District, Division Two, affirmed, agreeing that the trial court properly declined to apply Proposition 57 at resentencing for the reason that the defendant's judgment was final when Proposition 57 was enacted. (*Id.* at pp. 327-328.) Specifically, the *Federico* court wrote: "Contrary to defendant's claim, *section 1170, subdivision (d), says nothing about 'reopening' a judgment that has been final for years, in order to apply recently enacted laws retroactively.* Moreover, remanding the case to the juvenile court for a fitness hearing pursuant to Proposition 57 would certainly not comply with the language of

---

[3] "Proposition 57 prohibits prosecutors from charging juveniles with crimes directly in adult court. Instead, they must commence the action in juvenile court. If the prosecution wishes to try the juvenile as an adult, the juvenile court must conduct . . . a 'transfer hearing' to determine whether the matter should remain in juvenile court or be transferred to adult court. Only if the juvenile court transfers the matter to adult court can the juvenile be tried and sentenced as an adult." (*People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 303.)

section 1170, subdivision (d). The statute specifically provides that the court may '*resentence* the defendant in *the same manner* as if he or she had not previously been sentenced.' [Citation.] It simply allows the court to reconsider its sentencing choices in the original sentence and resentence the defendant." (*Id.* at p. 327, some italics added.) Given our plain language reading of the statutory amendments, we disagree with the *Federico* court to the extent its holding can be read to preclude modification of the judgment here.

The Attorney General also relies on *People v. Nelms* (2008) 165 Cal.App.4th 1465, for the proposition that section 1170(d) recall is "limited to resentencing and did not give the court authority to modify the judgment of conviction." (*Nelms*, at p. 1472.) However, as we have noted, the 2018 amendment changed section 1170(d) to expressly authorize modification of the judgment and it was that provision that was in effect at the time of the Secretary's recommendation here. Given that language, the 2008 holding in *Nelms* no longer applies.

### C. Changing the Plea Agreement

The Attorney General asserts that the trial court here is bound by the plea agreement, relying on *People v. Blount* (2009) 175 Cal.App.4th 992. In *Blount*, the court held section 1170(d) did not provide a trial court authority to deviate from the sentence negotiated by the parties. (*Blount*, at p. 994.) But section 1170(d) has been amended over the years since *Blount*, including the 2018 amendments underlying this litigation. It provides, in pertinent part: "The court resentencing under this paragraph may reduce a defendant's term of imprisonment and modify the judgment, *including a judgment entered after a plea agreement*, if it is in the interest of justice." (Italics added.) This language evinces in the clearest language possible the legislative intent to include plea agreements within the scope of section 1170(d). As our high court explained in *Doe v. Harris* (2013) 57 Cal.4th 64, "the general rule in California is that the plea agreement will be ' "deemed to incorporate and contemplate not only the existing law but the

9

reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy . . . .” ’ [Citation.] *That the parties enter into a plea agreement thus does not have the effect of insulating them from changes in the law that the Legislature has intended to apply to them*.” (*Doe,* at p. 66, italics added; see also *Harris v. Superior Court* (2016) 1 Cal.5th 984, 989-993 [rejecting the Attorney General’s argument that Proposition 47 could not be applied to sentences resulting from plea agreements because the electorate’s language —“whether by trial or plea”— indicated the intent to include within the scope of Proposition 47 sentences that were the result of negotiated agreements].) Trial courts are not bound by a stipulated sentence negotiated by the parties when resentencing under section 1170(d)(1).

### D. Conclusion — Authority to Recall and Resentence

We conclude that when the Secretary recommends recall and resentencing under section 1170(d)(1), trial courts have the authority to resentence defendants at any time based on an ameliorative change in the law giving courts discretion to strike or dismiss enhancements under section 1385, subdivision (a), even after the defendant’s judgment is final and even when the original sentence was the product of a plea agreement.

### II. Due Process Rights Related to Summary Declination

### A. Parties’ Contentions

Defendant asserts that, by summarily declining to adopt the Secretary’s recommendation to recall his sentence and resentence him without affording him notice and the opportunity to be heard, as well as a statement of reasons for its declination, the trial court denied him due process under the state and federal Constitutions. Defendant maintains that, where, as with section 1170(d), a statute requires judicial decision-making to determine whether reduced incarceration is appropriate, a liberty interest protected by the due process clauses of the Fifth and Fourteenth Amendments is implicated.

The Attorney General responds that defendant did not have any federal or state liberty interest attached to the trial court's recall and resentencing declination and consequently due process was not violated.

We conclude defendant does have a liberty interest and that he should be afforded the due process protections of notice, opportunity to be heard and a statement of reasons.

### B. Due Process Protection

#### 1. General Principles

The right to due process protects individuals from the arbitrary action of government. (*Kentucky Dept. of Corrections v. Thompson* (1989) 490 U.S. 454, 460 [104 L.Ed.2d 506].) "Due process is a flexible concept that calls for ' "such procedural protections as the particular situation demands." ' " (*People v. Hardacre* (2001) 90 Cal.App.4th 1392, 1399.) Procedural due process questions require a two-step analysis: (1) is there a liberty or property interest of which the defendant has been deprived, and (2) if so, were the procedures followed by the state constitutionally sufficient? (See *Thompson,* at p. 460; *Swarthout v. Cooke* (2011) 562 U.S. 216, 219 [178 L.Ed.2d 732, 737] (*Swarthout*).) The second step of the inquiry requires we answer the question: what process is due?

#### 2. Liberty Interest

In *People v. Loper* (2015) 60 Cal.4th 1155 (*Loper*), our high court recognized that a different subdivision of section 1170 — subdivision (e) providing criteria for the "compassionate release" of fatally ill prisoners — created a sufficient "substantial interest in personal liberty" to establish a right to appeal a denial for purposes of section 1237,[4] even though a defendant does not have a right to initiate such a proceeding. The court concluded the defendant's personal liberty was a substantial interest. (*Loper*, at p. 1161,

_____

[4] Section 1237, subdivision (b) affords defendants the right to appeal from "any order made after judgment, affecting the substantial rights of the party."

fn. 3.) Specifically, as pertinent here, the court stated: "By providing a mechanism for releasing eligible prisoners from custody, section 1170(e) implicates a prisoner's *substantial interest in personal liberty*." (*Ibid.*)

We agree with defendant that section 1170(d)(1) involves a similar liberty interest to that recognized by our high court in section 1170, subdivision (e) (section 1170(e)). Indeed, as we see it, "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." (*Foucha v. Louisiana* (1992) 504 U.S. 71, 80 [118 L.Ed.2d 437].) And as the United States Supreme Court has recognized, "state statutes may create liberty interests that are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment." (*Vitek v. Jones* (1980) 445 U.S. 480, 488 [63 L.Ed.2d 552]; *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex* (1979) 442 U.S. 1, 12 [60 L.Ed.2d 668] (*Greenholtz*).) We conclude that the provisions of section 1170(d)(1), like the provisions of section 1170(e) addressed by our high court in *Loper*, "implicates a prisoner's substantial interest in personal liberty" (*Loper, supra*, 60 Cal.4th at p. 1161, fn. 3), and thus gives rise to a liberty interest entitled to due process protection.

### 3. The Multi-Factor Test for Determining What Process is Due

" ' "Once it is determined that [the guarantee of] due process applies, the question remains what process is due." ' " (*People v. Allen* (2008) 44 Cal.4th 843, 862-863 (*Allen*); *People v. Otto* (2001) 26 Cal.4th 200, 210 (*Otto*); see also *Morrissey v. Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484].) In analyzing what process is due under the California Constitution, our high court has " 'identified four relevant factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail; and (4) the dignitary interest in informing

12

individuals of the nature, grounds, and consequences of the action and in enabling them to present their side of the story before a responsible government official.' " [5] (*Allen*, at pp. 862-863; *Otto*, at p. 210.)  As a shorthand, we shall refer to these factors as the *Allen*/*Otto* factors.

### 4.  Notice and Opportunity to be Heard

#### a.  The Private Interest

Defendant's private interest at stake is his liberty.  Under the particular circumstances of this case, if the trial court were to recall defendant's sentence, resentence him, and strike the firearm enhancement pursuant to sections 12022.53, subdivision (h) and 1385, subdivision (a), and decline to resentence him on the concurrent sentence for the commercial burglary, defendant would be subject to release as he would have served the entirety of his three-year term imposed on count one, robbery in the second degree.

This factor weighs in favor of a conclusion that defendant is entitled to notice and an opportunity to be heard.

#### b.  The Risk of an Erroneous Deprivation of the Private Interest

The risk of an erroneous deprivation of defendant's freedom through a procedure that denies a defendant the opportunity to be heard lies in the possibility that the court will not be apprised of additional information from defendant it should consider in

---

[5] This is the test under the California Constitution.  Except for the last factor addressing the dignitary interest implicated, the test under the federal constitution is the same.  (See *Mathews v. Eldridge* (1976) 424 U.S. 319 [47 L.Ed.2d 18].)  Our high court "adopted the *Mathews* balancing test as the default framework for analyzing challenges to the sufficiency of proceedings under our own due process clause," but with the "minor modification" of adding to it consideration of the dignitary interest factor when the rights of natural persons are at stake.  (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 213 (*Today's Fresh Start*).)  Thus, our conclusions applying the multifactor test are the same whether analyzed under the California Constitution or the federal Constitution.

exercising its discretion under section 1170(d)(1). Here, although there were laudatory comments about defendant's prison programming in the cumulative case summary submitted by the Secretary, defendant may have had more to add. For example, he may have wanted to submit a personal statement or personal letters from CDCR staff, prison program personnel, or other persons familiar with his prison programming and rehabilitation. He may have had information about potential employment and/or the family and community support that would be available to him upon his release. Also, if materials submitted by the Secretary were inaccurate, defendant could have pointed this out. This is just a partial list of ways defendant might have contributed information relevant to the trial court's decision making process.

Thus, the probable value of notice and an opportunity to be heard is clear. If defendant were afforded the opportunity to be heard, it is far more likely that *all* relevant facts, circumstances, and arguments could be considered by the trial court before it considered whether to grant a hearing or summarily decline to recall and resentence.

Consequently, this factor weighs in favor of notice and an opportunity to be heard.

### c. Government's Interest

There is a governmental interest in affording courts the opportunity to summarily reject frivolous applications to the court. However, given the nature of the application here—a recommendation from the Secretary made pursuant to regulations promulgated by CDCR—there is less risk that any one application would be completely frivolous.[6]

---

[6] Temporary regulations were in place at the time the Secretary made the recommendation in this case. Since then, permanent regulations have been promulgated. The current regulation, California Code of Regulations, title 15, section 3076.1 provides, in pertinent part: "(d) (1) An inmate may be considered for referral . . . if the applicable sentencing laws at the time of their sentencing hearing are subsequently changed due to new statutory or case law authority with statewide application. [¶] (2) Notwithstanding subsection (d)(1), inmates who meet the following criteria shall be excluded from consideration under this subsection: [¶] (A) Inmates who have not yet served five

14

There is also a governmental interest related to the additional fiscal and administrative burdens of the reviewing process.  The state has a legitimate financial interest in, and an interest in preserving, its scarce justice system resources.  The advent of an enhanced review procedure will tap into these resources.  However, the enactment of the 2018 amendments to section 1170(d) signals that a legislative determination has been made that the use of judicial resources to provide second chances to some individuals is warranted.  Consequently, we conclude the fiscal and administrative burden of providing notice and an opportunity to be heard is not an overriding consideration.[7]

---

continuous years or 50% of their current commitment, whichever comes first;  [¶]  1. For determinately sentenced inmates, '50%' means 50% of their Earliest Possible Release Date, as defined in Section 3371.1(c)(3)(A);  [¶]  2. For indeterminately sentenced inmates, '50%' means 50% of their Minimum Eligible Parole Date, as defined in Section 3000.  [¶]  (B) Inmates who have been found guilty of a serious or violent rules violation . . . within the last one year or whose serious or violent rules violation . . . is pending;  [¶] (C) Determinately sentenced inmates who are already scheduled for release within the next 18 months;  [¶]  (D) Determinately sentenced inmates who. . . are eligible for parole consideration within the next 18 months or have already been afforded parole consideration; or  [¶]  (E) Indeterminately sentenced inmates who. . . are scheduled for a parole hearing within the next 18 months or who have already been afforded a parole hearing, regardless of the decision by the Board of Parole Hearings.  [¶]  (3) Initial eligibility for consideration . . . shall be determined by the Classification Services Unit or the Correctional Case Records Unit.  [¶]  . . .  [¶]  (B) If an inmate is found eligible, the Classification Services Unit or the Correctional Case Records Unit shall prepare a Cumulative Case Summary . . . and refer the matter to the Secretary.  [¶]  . . .  [¶]  (e) (2) If the Secretary elects to recommend an inmate for recall and resentencing, a recommendation letter and Cumulative Case Summary shall be forwarded to the sentencing court and a copy shall be provided to the inmate and another copy placed in the inmate's central file within 10 business days of the decision.  [¶]  . . .  [¶]  (4) Pursuant to the broad discretion vested in the Secretary by statute, namely subdivision (d) of Section 1170 of the Penal Code, the Secretary's decision is final and not subject to administrative review."

[7] This is not to say that the Legislature need not consider enhanced budget appropriations to accommodate new workloads brought about by criminal justice system reforms.  The effectiveness of these reforms will depend, in substantial part, on the ability of courts to handle the increased workload.

Indeed, the court here mailed defendant a copy of its summary declination after it ruled. Once routinized, we see it as only minimally more burdensome for courts to mail defendants a notice prior to ruling. True, in providing an opportunity to be heard, judges must devote time to reviewing whatever materials are submitted by defendant, but this is as it should be—judges should be provided all relevant evidence and information before summarily declining to recall and resentence.

Thus, on balance, the governmental interest factor weighs in favor requiring notice and an opportunity to be heard.

### d. Dignitary Interest

The dignitary interest in informing individuals of the nature, grounds, and consequences of the action and in enabling them to present their side of the story before a responsible government official is a factor related to the due process provision of our state Constitution. (See fn. 5, *ante*.) It is clear that providing notice and an opportunity to be heard would inform defendants that the court is considering the Secretary's recommendation and whether to summarily decline recall and resentencing. The notice would give defendants the chance to provide input. Without notice and an opportunity to be heard, people in defendant's position are "relegate[d] . . . to the role of a mere spectator, with no power to attempt to affect the outcome." (See *Allen*, *supra*, 44 Cal.4th at p. 869.) And as our high court has noted: " 'For government to dispose of a person's significant interests without offering him [or her] a chance to be heard is to risk treating him [or her] as *a nonperson*, an object, rather than a respected, participating citizen.' " (*Today's Fresh Start, supra*, 57 Cal.4th at p. 213.) This is not to say that people serving state prison sentences have all of the same rights as people who are not incarcerated, but they are people and they are entitled to respect and to participate in proceedings affecting their liberty interests.

The dignity interest factor also weighs in favor of affording defendants notice and an opportunity to be heard.

### e. *Williams* and *McCallum*

We note that Division Two of the Fourth District recently concluded that defendants for whom the Secretary has written section 1170(d) recommendations are entitled to notice and an opportunity to be heard as a matter of due process. (*People v. Williams* (2021) 65 Cal.App.5th 828 (*Williams*).) The *Williams* court did not engage in an *Allen/Otto* analysis. Instead, it stated: "It is axiomatic that due process requires the sentencing court to give the parties formal notice of CDCR's recommendation and the opportunity to be heard if the court is considering resentencing defendant." (*Id*. at p. 833.)[8] For this proposition, the *Williams* court cited *People v. McCallum* (2020) 55 Cal.App.5th 202 (*McCallum*), decided by Division Seven of the Second District.

The *McCallum* court did not decide the issues before it on due process grounds, and the circumstances of the trial court's ruling on the Secretary's section 1170(d) recommendation in *McCallum* were different than those presented here. In *McCallum*, after receiving notice of the Secretary's section 1170(d) recommendation, counsel for the defendant lodged a notice of appearance and asked the trial court to hold a case management conference to discuss the Secretary's recommendation and, if necessary, set a briefing and hearing schedule. (*McCallum, supra*, 55 Cal.App.5th at pp. 206, 209.) Without setting a case management conference or providing either defendant or the prosecution the opportunity to provide additional information, the court issued a minute order declining to recall the defendant's sentence. (*Id*. at pp. 206, 209.) Construing the statutory language in section 1170(d), the *McCallum* court concluded the Legislature did not intend to require the trial court to hold a hearing before ruling on the

---

[8] In *Williams*, the trial court followed the recommendation of the Secretary by recalling defendant's sentence and striking the five-year sentence for a section 667, subdivision (a) prior serious felony enhancement. But it did so without giving notice to either party. (*Williams*, *supra*, 65 Cal.App.5th at p. 832.) The People appealed. (*Ibid*.)

recommendation.**9** (*Id*. at pp. 206, 211-215.) However, the *McCallum* court held the trial court abused its discretion by rejecting the Secretary's recommendation without allowing the defendant the opportunity to present additional information. (*Id*. at pp. 216-219.) But *McCallum* did not ground this holding on due process, and it is factually different from the instant case because the defendant there had counsel who apparently was ready to provide additional information. Given this factual backdrop, the *McCallum* court wrote: "Once [the defendant] requested an opportunity to respond to the secretary's recommendation by requesting a case management conference and possible briefing and presentation of evidence, the trial court's decision simply to ignore [his] *request* to provide input on the secretary's recommendation was an abuse of discretion." (*Id*. at p. 216.) The court reasoned that the procedural setting in *McCallum* was analogous to the procedural circumstance our high court addressed in *People v. Carmony* (2004) 33 Cal.4th 367, 375 (*Carmony*), regarding a trial court's discretion to dismiss "Three Strikes" law strike convictions under section 1385. (*McCallum*, at p. 217.) In *Carmony*, our high court held that a defendant is entitled to invite the trial court to consider dismissing strike convictions. (*Carmony*, at p. 375.) The *McCallum* court stated: "Thus, as in *Carmony*, *upon a request by McCallum*, the trial court was required to consider evidence in support of the secretary's recommendation." (*McCallum*, at p. 217, italics added.)**10**

---

**9** The *McCallum* court observed: "It is up to the Legislature to address in the first instance whether an inmate should be afforded a hearing in response to a recommendation by the Secretary for recall and resentencing." (*McCallum*, *supra*, 55 Cal.App.5th at p. 206.)

**10** The *McCallum* court pointed to the *Loper* court's analogy to Three Strikes invitations in *Carmony*: " ' " '[T]he court must consider evidence offered by the defendant in support of his assertion that the dismissal would be in furtherance of justice.' " ' " (*McCallum*, *supra*, 55 Cal.App.5th at p. 217, quoting *Loper*, *supra*, 60 Cal.4th at p. 1167 & *Carmony, supra*, 33 Cal.4th at p. 375.) As noted, our high court in *Loper* addressed

18

But in the instant case, there was no such request from the defense like in *McCallum* to trigger the trial court's consideration of information provided by the defense. And although the Secretary gave defendant here notice of the section 1170(d) recommendation, defendant was not in a position to know whether it was received by the trial court, for what time frame the court would consider it, or that the court was inclined to reject the recommendation. In short, prior to the court's ruling, defendant had no opportunity to invite the court to exercise its discretion under sections 1170(d)(1) and 1385, subdivision (a), or, more importantly, to provide additional information in connection with that invitation, similar to defendants in the Three Strikes context or the defendant in *McCallum*.

### f. Balancing and Notice and Opportunity to be Heard

Given the liberty interest at stake, we view the issue before us as a matter of constitutional due process. That requires an analysis under *Allen/Otto* to determine what process is due. "The core of due process is the right to notice and a meaningful opportunity to be heard." (*Lachance v. Erickson* (1998) 522 U.S. 262, 266 [139 L.Ed.2d 695] (*Lachance*); see also *Allen*, *supra*, 44 Cal.4th at p. 869 [" 'The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner" ' "].) On balance, the *Allen/Otto* factors weigh heavily in favor of providing defendant notice and an opportunity to be heard.

---

the question of whether a defendant's denial of compassionate release under section 1170(e) was appealable. Specifically, the question the *Loper* court answered was: "[a]ssuming that the motion for recall was properly initiated by the Board, does the prisoner have the right to appeal from the denial of that motion *even though he could not have initiated the motion himself?*" (*Loper*, at p. 1163.) In answering this question, our high court relied on its decision in *Carmony*. (*Id*. at p. 1167.) In *Carmony*, the court held a defendant had the right to appeal a trial court's refusal to dismiss strike convictions under section 1385. (*Carmony*, at p. 376.) Based on the reasoning in *Carmony*, the *Loper* court overruled earlier cases upon which the Attorney General relied that had held a defendant had no right to appeal a court's rejection of section 1170(d) relief. (*Loper*, at p. 1167.)

Accordingly, we conclude that a defendant for whom the Secretary has written a section 1170(d) recommendation based on a change in the law is constitutionally entitled to notice and an opportunity to be heard as a matter of due process. Thus, if the trial court is considering summary declination of recall and resentencing after reviewing a section 1170(d) recommendation from the Secretary based on a change in the law, due process requires that: (1) the court to give defendants notice it is considering summary declination; (2) the notice should inform defendants they may provide additional documentation or evidence to the court before the court rules; (3) the notice should give a reasonable and specific time to respond; and (4) the notice should provide defendants information stating the precise place to send their response.[11]

### 5. Statement of Reasons

In addition to notice and an opportunity to be heard, defendant also asserts that if a court summarily declines to follow the Secretary's recommendation, due process requires a statement of reasons. We agree.

We briefly discuss the *Allen*/*Otto* factors as to whether a statement of reasons is required as a matter of due process here. First, regarding the private interest affected, we have already noted the liberty interest implicated by a court's decision rejecting the Secretary's section 1107(d) recommendation. This factor cuts in favor of requiring a statement of reasons.

Second, when a court has thought out and expressly states its reasons, the risk of arbitrary decision-making and erroneous deprivation of the interest at stake is diminished. Thus, the second *Allen*/*Otto* factor cuts in favor of requiring a statement of reasons.

---

[11] Of course, the prosecution must be given the same notice and opportunity to be heard. (See *Williams*, *supra*, 65 Cal.App.5th at pp. 831-832 [stating that the parties should be given notice and an opportunity to be heard].)

Third, as far as the governmental interests related to fiscal and administrative burdens, we again acknowledge that the revamped section 1170(d) procedure will create additional work for the courts. Consequently, providing a statement of reasons adds to the workload of our courts. But judges are accustomed to providing reasons for their sentencing choices as required by statute and the Rules of Court. (§ 1170, subd. (c); Cal. Rules of Court, rule 4.406(a).) Here, we envision no greater burden than that required of judges when making sentencing choices. The reasons can be stated orally with a reporter's transcript provided to defendant.[12] Or if the court chooses, it can put its reasons in writing. Apart from the workload burdens on the court, the government interest includes ensuring that judges get their decisions right and we think the consideration given to the decision is enhanced when the court must set forth the reasons for its ruling. Moreover, a statement of reasons will facilitate appellate review. Thus, the governmental interest weighs in favor of providing a statement of reasons.

Finally, the dignitary interest in informing individuals of the nature and grounds of the action weighs in favor of requiring a statement of reasons. Indeed, by providing reasons for a declination, a defendant will be informed of deficiencies that he or she could address and improve upon. And if the defendant does make improvements to address those deficiencies, the Secretary could be impressed enough to make another recommendation in the future. Section 1170(d) does not place a limit on how many recommendations the Secretary can make as to individual defendants.

Finally, we see the section 1170(d) recommendation as being somewhat analogous to parole considerations, in which statements of reasons are also provided. Indeed, the United States Supreme Court has held, in the parole consideration context, that there is a due process right to an opportunity to be heard *and a statement of reasons*. (*Swarthout*,

---

[12] The parties need not be present.

*supra*, 562 U.S. at p. 220, citing *Greenholtz*, *supra*, 442 U.S. at p. 16; see also *In re Kavanaugh* (2021) 61 Cal.App.5th 320, 353, citing *In re Sturm* (1974) 11 Cal.3d 258, 268-270 [a prisoner is not entitled to parole, but he or she is entitled to have his application duly considered and because of the right to due consideration, " 'due process requires that the [Board] support its determinations with a statement of its reasons therefor' "].)  As the high court in *Greenholtz* noted, parole consideration by a parole board is much like a judge's sentencing choice.  (*Greenholtz*, at p. 16.)  Additionally, when parole is denied, a statement of reasons "informs the inmate in what respects he [or she] falls short of qualifying for parole; this affords the process that is due under these circumstances."  (*Ibid*.)

We conclude that due process requires that the trial court provide a statement of reasons if it summarily declines to recall and resentence a defendant after receiving a section 1170(d) recommendation from the Secretary.

### III.  Sixth Amendment Right to Counsel

Defendant contends he has a Sixth Amendment right to counsel "during resentencing decisions."  (Bold omitted.)  Specifically, he asserts that because section 1170(d) "is now part of the determinate sentencing process, the court should appoint counsel to represent [him]" under the authority of the Sixth Amendment because resentencing is a "critical stage" in the proceedings.  He also contends, "[t]he decision [to] recall is a 'critical stage' in the proceedings because it involve[s] sentencing."  While we agree that defendant is constitutionally entitled to representation by counsel for purposes of resentencing, we disagree that a defendant has a constitutional right to counsel before a court summarily declines to recall his sentence.

In *People v. Frazier* (2020) 55 Cal.App.5th 858, Division Seven of the Second District held that "the filing of the Secretary's recommendation letter inviting the court to exercise its jurisdiction pursuant to section 1170, subdivision (d)(1), to recall a sentence, *without more*, does not trigger a due process right to counsel."  (*Id*. at p. 869, italics

added.)  While criminal defendants have a Sixth Amendment right to counsel at critical stages of a criminal proceeding through sentencing, there is no constitutional right to counsel in postjudgment collateral challenges.  (*Id*. at p. 865.)[13]  We agree with the court in *Frazier* in cases such as this one where the prosecution has not weighed in prior to the trial court's summary declination.[14]

---

[13] Recently, our high court reinforced what the *Frazier* court recognized – "There is no unconditional state or federal constitutional right to counsel to pursue collateral relief from a judgment of conviction." (*People v. Lewis* (2021) 11 Cal.5th 952, 972 [holding that a person seeking relief under section 1170.95 is not constitutionally entitled to counsel at the outset of the petitioning process; See *Frazier*, *supra*, 55 Cal.App.5th at pp. 865, 867 ["the Sixth Amendment right to counsel at critical stages of a criminal proceeding through sentencing does not apply to postjudgment collateral challenges"; "There simply is no constitutional right to counsel or a hearing in connection with every postjudgment request with the potential to affect a substantial right"].)  However, the *Lewis* court noted that " 'if a [habeas corpus] petition attacking the validity of a judgment states a prima facie case leading to issuance of an order to show cause, the appointment of counsel is demanded by due process concerns." (*Lewis*, at p. 973.)  The court explained:  "When 'an indigent petitioner has stated facts sufficient to satisfy the court that a hearing is required, his claim can no longer be treated as frivolous and he is entitled to have counsel appointed to represent him.' " (*Ibid*.)  A section 1170(d) recommendation *based on a change in the law*, however, is not analogous to a habeas petition.  In habeas corpus proceedings, a defendant seeks *relief for some error* that took place in the criminal proceedings leading to the conviction and thus a prima facie showing of an entitlement to relief from the error triggers a due process right to counsel.  (See *Frazier*, at p. 866.)  That is not the case in a section 1170(d) proceeding *based on a change in the law*, which asks the court to exercise discretion based on equitable considerations.  (See Couzens, Bigelow, and Prickett, Sentencing California Crimes (The Rutter Group 2020) § 28:8, italics added [trial court exercises discretion based on equitable considerations].)  Thus, despite the fact the Secretary's recommendation is not a frivolous application, it is not analogous to a prima facie showing in a habeas corpus petition.

[14] While we conclude defendants have no constitutional right to counsel before the trial court summarily declines to recall and resentence pursuant to the Secretary's recommendation, it is certainly within the prerogative of the Legislature to create a statutory right to counsel by amending section 1170(d).

## DISPOSITION

The order declining to recall and resentence defendant is reversed.  The matter is remanded to the trial court for further proceedings consistent with this opinion.


          /s/
MURRAY, Acting P. J.


We concur:


    /s/
DUARTE, J.


    /s/
RENNER, J.